CLARKE (NEVITT v.). See Case No. 10,-138.

---

## Case No. 2,859.

### CLARKE v. NEW JERSEY STEAM NAV. CO.

[1 Story, 531;[1] 4 Law Rep. 134.]

Circuit Court, D. Rhode Island. June Term, 1841.

ADMIRALTY JURISDICTION — PROCEEDINGS AGAINST NON-RESIDENT FOREIGNERS AND FOREIGN CORPORATIONS.

1. In all proceedings in rem, when a court of admiralty has jurisdiction over the thing itself, it is wholly unimportant, to whom it belongs.

2. By the common law, foreign corporations and non-resident foreigners cannot be served with process by any of the courts of common law, nor can their property be attached to compel their appearance. The authority, whenever it exists, results from special custom or statute provisions.

[Cited in Ashbrook v. The Golden Gate, Case No. 574.]

3. It seems, that the principles of the common law are inapplicable to process and proceedings in courts of admiralty.

[Discussed in Wilson v. Pierce, Case No. 17,-826. Cited in Atkins v. Fibre Disintegrating Co., Id. 600; Winans v. McKean R. & Nav. Co., Id. 17,862; Cushing v. Laird, Id. 3,508.]

4. The district courts of the United States, as courts of admiralty, may award attachments against the property of foreign corporations, found within their local jurisdiction.

[Discussed in Wilson v. Pierce, Case No. 17,-826. Cited in Boyd v. Urquhart, Id. 1,-750; Atkins v. Fibre Disintegrating Co., Id. 600; Winans v. McKean R. & Nav. Co., Id. 17,862; Cushing v. Laird, Id. 3,508; Myers v. Dorr, Id. 9,988, 18 Wall. (85 U. S.) 305; Louisiana Ins. Co. v. Nickerson, Case No. 8,539. Distinguished in Atkins v. Fibre Disintegrating Co., Id. 602.]

5. It is well settled, that a foreign corporation may sue in another jurisdiction.

This was a suit in admiralty, brought by an appeal from a pro forma decree of the district court [for the district of Rhode Island], dismissing the libel. The original libel was brought in February, 1841, and prayed only for personal process against the corporation, and that Moses B. Ives, one of the directors of the company, might be summoned to appear and answer the libel. At the return day Moses B. Ives appeared, and declining to appear for the company, prayed that the writ might be dismissed; and there-

upon it was dismissed against him personally; but the libel was retained for further process against the property of the company. Afterwards an amended libel was filed, praying for process against the property of the company to be found within the district; and, accordingly, the district judge awarded a process of attachment against the property; and, upon that process, the marshal attached a scow, the property of the company, found within the district.

The amended libel was in substance as follows: First. That the respondents, in the month of January, in the year of our Lord one thousand eight hundred and forty, were common carriers of merchandise on the high seas, from the city of New York, to Stonington, in the state of Connecticut, and were then owners of the steamboat Lexington, then lying at the port of New York, in the state of New York, and which vessel was then used by the defendants as common carriers as aforesaid, for the transportation of goods, wares, and merchandise on the high seas, from the said port of New York to the port of Stonington, in the state of Connecticut. Second. That the libellant, on the high seas and within the ebb and flow of the tide, and within the admiralty and maritime jurisdiction of the United States, and of this court, on the 13th day of January, 1840, contracted with the respondents for the transportation by water, on board of the said steamboat Lexington, from the said port of New York to the said port of Stonington, of twenty bales of cotton to the libellant belonging, of the value of fifteen hundred dollars. And the said respondents, then and there, for a reasonable hire or reward, to be paid by the libellant therefor, contracted with the libellant, that they would receive the said twenty bales of cotton on board of the said steamboat Lexington, and transport the same therein on the high seas from the said New York to the said Stonington, and safely deliver the same to the libellant. Third. That the libellant, on the high seas and within the ebb and flow of the tide and within the admiralty and maritime jurisdiction of the United States and of this court, on the 13th day of January, A. D. 1840, contracted with the respondents for the transportation by water on board of the said steamboat Lexington, from the said port of New York to the said port of Stonington, of twenty bales of cotton of the value of fifteen hundred dollars to the libellant belonging, and thence by the railroad of the New York, Providence and Boston Railroad Company, to the city of Providence, in the state of Rhode Island; and the respondents, then and there, for a reasonable hire or reward to be paid them therefor by the libellant, contracted with the libellant, that they would receive the said twenty bales of cotton on board of the said steamboat Lexington, and transport the same therein from the said port of New York, on the high seas, to the said Stonington

---

[1] [Reported by William W. Story, Esq.]

and there receive the said cotton upon the cars of the said railroad company, and convey the same thereon to Providence, in the state of Rhode Island, and safely deliver the same to the libellant. Fourth. That the libellant, on the said 13th day of January, A. D. 1840, at the said New York, delivered to the respondents at the said port of New York, on board of the said steamboat Lexington, then lying at the said port of New York, and within the ebb and flow of the tide, and within the admiralty and maritime jurisdiction of the United States and of this court, and the respondents then and there received on board of the said steamboat the said cotton, for the purpose of transporting the same by water on the high seas from the said New York to the said Stonington, and deliver the same to the libellant as aforesaid. Fifth. That the said steamboat Lexington sailed from the said New York on the said 13th day of January, 1840, with the said cotton on board, and bound to the said port of Stonington. Yet the said respondents, their officers, servants. and agents so carelessly and improperly stowed the said cotton, and the engine, machinery. furniture, rigging, and equipments of the said steamboat, were so imperfect and insufficient, and the said respondents. their officers, servants, and agents so carelessly, improperly, and negligently managed and conducted the said steamboat Lexington during her said voyage, that by reason of such improper storage, imperfect and insufficient engine, machinery, furniture, rigging, and equipments, and of such careless, negligent, and improper conduct, the said steamboat together with the said cotton, to the libellant belonging, was destroyed by fire on the high seas, and within the admiralty and maritime jurisdiction of the United States and of this court, and wholly lost. Sixth. That by reason of the destruction of the said steamboat Lexington, and of the said cotton, the libellant has sustained damage to the amount of two thousand dollars. Seventh. That the said New Jersey Steam Navigation Company are possessed of certain personal property within the said Rhode Island district, and within the ebb and flow of the sea, and within the maritime and admiralty jurisdiction of this court, to wit, of the steamboat called the Rhode Island. her tackle, apparel, furniture, and appurtenances and of other personal property. Eighth. That all and singular the premises are true and within the admiralty and maritime jurisdiction of this court, in verification whereof, if denied. the libellant craves leave to refer to the depositions and other proofs to be by him exhibited in the cause.

Wherefore, the libellant prays, that process in due form of law according to the course of the admiralty and of this court, in causes of admiralty and maritime jurisdiction, may issue against the respondents, and against the said steamboat Rhode Island. her tackle, apparel, furniture, and appurtenances, or any other property to the respondents belonging, within the said Rhode Island district, and that the said property, or any part thereof, may be attached and held to enforce the appearance of the respondents in this court to answer the matters particularly propounded, and to answer the damages, which may be awarded to the libellant for the causes aforesaid. And that this court would be pleased to pronounce for the damages aforesaid, and to decree such damages to the libellant as shall to law and justice appertain. To this process, the company appeared under protest against the jurisdiction; and afterwards, by their proctor and counsel, they filed the following plea: And now the New Jersey Steam Navigation Company, a corporation duly and legally incorporated by the legislature of the state of New Jersey, and established and transacting business in Jersey City, in the said state of New Jersey, appear before this honorable court by Peter Pratt, their proctor and attorney, and protesting against the process and the service of the same in manner and form, as the same has been issued and served in the case of the libel and complaint of John H. Clarke, of Providence, in the Rhode Island district. against the said corporation, say, that this honorable court here have no cognizance or jurisdiction over this corporation or the subject matters set forth in the libel of the said libellant to compel or require them to appear in this court and to plead to or answer to the said libel and complaint; because the said New Jersey Steam Navigation Company are a corporation, legally incorporated by the legislature of the state of New Jersey, established and transacting business in Jersey City, within the limits and jurisdiction of the district of New Jersey, and can alone be required and compelled to appear and plead or answer to matters within the maritime and admiralty jurisdiction of the United States, in the district court of the district of New Jersey, and this honorable court have not jurisdiction and ought not to proceed to enforce their pretended claim alleged in the libel aforesaid against their property or against the said corporation. Wherefore, the said New Jersey Steam Navigation Company pray, that this honorable court would be pleased to pronounce against the libel and the process and service thereof as aforesaid, and that the same may be dismissed with their costs.

The cause was thereupon, by the consent of the parties, brought by appeal to this court from a pro forma decree of the district court dismissing the libel.

R. W. Greene, for libellant.
Pratt & Whipple, for respondents.

STORY. Circuit Justice. No question has been made at the bar. that the case stated in the libel is a case of admiralty and maritime jurisdiction. it being founded in a maritime contract. and asserting, as a breach thereof, a maritime loss by negligence. The

Orleans v. Phoebus, 11 Pet. [36 U. S.] 175–184. Neither has it been doubted, that the process of attachment well lies in an admiralty suit against the property of private persons, whose property is found within the district, although their persons may not be found therein, as well to enforce their appearance to the suit, as to apply it in satisfaction of the decree rendered in the suit. Ever since the elaborate examination of this whole subject, in the case of Manro v. Almeida, 10 Wheat. [23 U. S.] 473, this question has been deemed entirely at rest.

The real point of controversy is, whether the respondents, being a corporation created by, and having its corporate existence and organization in the state of New Jersey, is, as a foreign corporation, liable to a suit in personam in the admiralty in this district, not directly, but indirectly through its attachable property here, so as to compel the appearance of the corporation to answer the suit, or at all events to subject the property attached to the final judgment and decree of the court. The whole argument turns upon this proposition, that there is a distinction between the case of a private person, and that of a corporation. The former is suable in the admiralty by process of attachment in a suit in personam, against his property found in the district, although he may not personally be found within the district; whereas a corporation is liable to be sued only in the state, where it has its corporate existence, and from which it derives its charter, and not elsewhere, although its property may be found in the district, where the suit is brought. If the present were a suit in rem against the property to enforce a right of property or a lien, or to subject it, as the offending thing, (as in cases of collision,) to the direct action of the court, the case could not admit of any real doubt; for in all proceedings in rem, the court having jurisdiction over the property itself, it is wholly unimportant, whether the property belongs to a private person or to a corporation, to a citizen or to a foreigner, to a resident or to a non-resident, to a domestic or to a foreign corporation. In each and in every such case the jurisdiction is complete and conclusive. If the case were one exclusively dependent upon the local law of Rhode Island, the jurisdiction of the court would be equally clear; for by the statute of Rhode Island of January, 1840 (Sess. Acts, p. 103), it is enacted, that "when any incorporated company, established without this state, shall be indebted or liable to any person or persons, the personal and real estate of such company shall be liable to be attached and held to answer any just debt and demand." And the mode of serving the process is specially pointed out by the act.

The exemption of the corporation is sought to be established upon other grounds; first, upon the ground, that the state law is not applicable to an admiralty suit, the state being incapable of conferring or taking away the jurisdiction of the courts of the United States; and next upon the ground of the non-amenability of a foreign corporation to answer in any suit in any other state, than that, from which it derives its corporate existence and charter, upon the principles of the common law, which furnish a just authority or analogy for a similar rule in courts of admiralty. It may well be doubted, whether the principles of the common law, as to process and proceedings, can be properly imported into courts of admiralty, to regulate their process, or proceedings, or jurisdiction. It is plain, that the supreme court of the United States in Manro v. Almeida, 10 Wheat. [23 U. S.] 473–490, repudiated any such doctrine, and treated it as a grave mistake to suppose, that the process of attachment in the admiralty was borrowed from the foreign attachment by the custom of London; or, indeed, that it had any other origin than in the civil law. But the argument, founded on the supposed analogies of the common law, is not as stringent, as has been supposed. The process of the common law could not reach foreign corporations, for the plain reason, that they were not inhabitants of and had not any corporate existence within the realm. But this was equally true in respect to natural persons, not inhabitants of, or found within the realm. Foreigners, who were non-residents, could not be served with process to appear in any of the courts of common law, nor could their property be attached to compel their appearance. Whenever and wherever, in any such cases, process can be served upon the property, either of foreign corporations, or of foreign natural persons, who are non-residents, the authority to do so results either from special custom, or from statute provisions. See Com. Dig. "Attachment," B. D.

The cases cited at the bar all turn upon this distinction. In McQueen v. Middletown Manuf'g Co., 16 Johns. 5, the only question was, whether a foreign attachment, under the foreign attachment act of New York, lay against the property of a foreign corporation; and it was held, that no such attachment did lie upon the true interpretation of the act; and, indeed, that it could not lie against a domestic corporation; for it could not conceal itself or abscond. The court, upon that occasion, said, that a foreign corporation could not be sued in New York; for the process against a corporation must be served upon its head or principal officer within the jurisdiction of the sovereignty, where this artificial body exists. That is clear enough upon the principles of the common law, as already stated. The case of Peckham v. North Parish of Haverhill, 16 Pick. 274, 285, 286, merely affirms the same doctrine, that foreign corporations are without the jurisdiction of the courts of the state. But it so happens, that an op-

posite doctrine has been asserted, as to the operation of the local laws of Pennsylvania, in cases of the process of foreign attachment; and it has been there held, that foreign corporations are within the reach of that process. Bushel v. Commonwealth Ins. Co., 15 Serg. & R. 176. The decision in the case of Wilson v. Graham [Case No. 17,804], and that of Ex parte Graham [Id. 5,658], turned upon other considerations. But the court there affirmed a principle, which seems directly applicable to the present case; and that is, that it is essential to give jurisdiction to the district and circuit courts of the United States in any district, that the person or the thing, against which the proceedings are directed, should be within their local jurisdiction. Now, here the thing is within the jurisdiction, and it may be added, that even in suits in personam only, if a person, who is out of the jurisdiction, chooses to appear and defend the suit without objection, there is nothing to prevent the courts of the United States from entertaining the suit, if otherwise unexceptionable; for his appearance without process is a waiver of the objection of the non-service of process within the district; and the case does not fall within the prohibitory clause of the eleventh section of the judiciary act of 1789, c. 20 [1 Stat. 73]. This is clearly established. See Harrison v. Rowan [Case No. 6,140]; Gracie v. Palmer, 8 Wheat. [21 U. S.] 699; Pollard v. Dwight, 4 Cranch [8 U. S.] 421; Knox v. Summers, 3 Cranch [7 U. S.] 496; Logan v. Patrick, 5 Cranch [9 U. S.] 280. It was applied to the very case of a foreign attachment against the property of non-resident defendants, in the case of Pollard v. Dwight, 4 Cranch [8 U. S.] 421, where it was held, that the appearance of the defendants was a waiver of all objections to the non-service of process upon them within the district, where the suit was brought. There is nothing in the nature or character of a corporation, which prevents it from falling within the scope of the same doctrine. The case of Flanders v. Aetna Ins. Co. [Case No. 4,852], is directly in point, on this very question; for, there, the corporation was a foreign corporation; and it was held, that the jurisdiction attached, and the non-service of process within the district did not present any obstacle to the proceedings, as the corporation had appeared and defended the suit; and it was but a privilege to the corporation to be sued within the district, where it was established, which it was at full liberty to waive. The supposed authorities, then, at the common law, which have been relied on, furnish no ground, on which the present objection can be sustained. They all turn upon this simple proposition, that a foreign corporation cannot be compelled to appear and defend a suit in any other state, than that, where it is created and established, unless the local law otherwise provides, and property or effects of the corporation can

be found, and by the local law can be attached, to respond the exigency of the suit, or to compel an appearance thereto. If the local law provides such a remedy, then it is competent for the local tribunals to exert it against the foreign corporation. Now, it is precisely in this very view, that the jurisdiction of the courts of admiralty applies. That jurisdiction may be executed, not only against persons, found within the district, but also by attachment against their property, found within the district, although the persons are not there. This was the very point decided (as we have seen) in Manro v. Almeida, 10 Wheat. [23 U. S.] 473. So that the jurisdiction is as complete, when the property is found within the district, as it is, when the person is there.

What difference, then, can it make upon principle, whether the owner of the property be a natural person, or a corporation? In each case, where the court acts upon the property, it acts solely in rem; and it is at the option of the owner, whether he will appear and allow the proceedings to go on in personam, or not. What ground is there to say, that a foreign corporation may not appear and defend its rights of property, as well as a natural person in a foreign jurisdiction? In all proceedings directly in rem, this is the universal rule and practice. It is difficult to perceive, why it is not equally true, where the property is before the court, to be subjected to its action; for unless there is an appearance and a general defence, the decree of the court ultimately binds and acts in rem only upon the thing, which is attached.

But upon the principle, what is the foundation of the objection? It is exceedingly clear, that a foreign corporation may sue in another jurisdiction. Not to multiply authorities upon so clear a point, I will simply refer to the case of Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 519, 520, 587–591, where Mr. Chief Justice Taney, in delivering the opinion of the court, examined the subject, as well upon principle as upon authority. If a foreign corporation may sue, it may also be sued in another jurisdiction, at least to the extent of subjecting its property, found within the jurisdiction, to the process and decree of the courts thereof, upon the acknowledged principle, that all persons and all property found within the territorial limits of any sovereignty, are subject to its authority and laws. This is a well established doctrine of international law. Story, Confl. Laws, §§ 530–618. Even the property of foreign sovereigns has not been deemed exempt from this territorial jurisdiction; and courts of admiralty have not unfrequently exerted their authority over such property. U. S. v. Wilder [Case No. 16,694]. Bynkershoek and other jurists maintain, that the private property of foreign sovereigns, whatever may be the case as to public property, is subject to the local jurisdiction of the courts,

where it is found. Bynk. De Foro Legatorum, cc. 3, 4; S. P. cited [The Exchange v. McFaddon] 7 Cranch [11 U. S.] 125, 126; The Prins Frederik, 2 Dods. 458–462; Mart. Law Nations, B. 5, § 9.

Upon the whole, I find no sufficient authority upon principles of general law. or maritime law, or admiralty law, to maintain the distinction contended for between the cases of an attachment of the property of a foreign corporation, and that of a private person, so far as the process of the admiralty is concerned. The exceptive plea or allegation to the jurisdiction of the court must, therefore, be overruled, and the corporation be assigned to appear and answer over to the merits of the cause; otherwise proceedings will be had upon their default against the property, as in other like cases.