PAUL C. W. SOHEGE et al.

*v.*

THE SINGER MANUFACTURING COMPANY et al.

[Submitted October 15th, 1907. Decided November 19th, 1907.]

1. A plea must reduce the issue between the parties to a single point, and, though the facts and circumstances may be voluminous, they must in the last analysis be reducible to a single issue, and a plea presenting two or more distinct issues or points must be held bad, and the defendant be put to his answer and full discovery.

2. The court of chancery has jurisdiction of a bill by a citizen and a foreigner to have shares in a New Jersey corporation held by foreign residents awarded to complainants, and to have their names placed on the stock register.

3. Where, on a bill by a citizen and a foreigner to have shares in a New Jersey corporation held by foreign residents awarded to complainants, and to have their names placed on the stock register, the court has enjoined transfer of the shares and appointed receivers of them, the foreign defendants may be brought in by substituted service.

On bill and plea.

On January 7th, 1879, Mrs. Isabelle E. Singer, a widow, and a resident of England, was the owner and holder in her own right of two thousand seven hundred and eighty-seven shares of the stock of the Singer Manufacturing Company, a corporation organized under the laws of this state. Being about to contract a second marriage with the Vicompte de Bloemendaal, otherwise known as the Duc de Camposelice, she, on the above-named date entered into an antenuptial agreement with her future husband, and with Messrs. Palmer and Gould, as trustees, by which she transferred the said shares to Palmer and Gould upon the trust that they should pay the income of the shares to herself during her life for her separate use with remainder to her children, unless she should by will or deed make other appointment of the fund. The contract provided that a proper

deed of settlement should be executed as soon as conveniently might be, and that "these presents shall, so far as practicable, in all respects be construed and take effect in accordance with the principles of English law." On the following day, January 8th, 1879, Mrs. Singer was married to the Duc de Camposelice. He died on September 1st, 1887. In the latter part of 1891, she, then the Duchess de Camposelice, contracted a marriage with Paul C. W. Sohege, one of the complainants, in the city of Paris, in France, at which time she appears to have been living in that city. She previously had entered into an antenuptial contract with Sohege, which, it is assumed, was properly made under the authority and according to the forms of the French law. This agreement seems to exclude from its operation the above-mentioned two thousand seven hundred and eighty-seven shares of stock and to leave the custody and control thereof in the English trustees, but for the sole benefit of the wife and her children as theretofore. On February 10th, 1898, a deed of settlement was executed with relation to the said shares between Madam Sohege, the English trustees, and A. M. Singer, W. M. G. Singer and Lewis Rendell, by virtue of which Messrs. Palmer and Gould were relieved from the trusteeship of the said shares and A. M. Singer, W. M. G. Singer and Lewis Rendell were appointed in their stead. This deed of settlement was made in pursuance of a power reserved to that end in the original antenuptial agreement with the Duc de Camposelice and by way of execution of the formal deed of settlement provided for in that instrument. This agreement or deed of settlement does not appear to alter in any material matter the present use and ultimate destination of the shares. Madam Sohege yet had the income from the property during her life with remainder to her children, who will hereafter be designated as the Singer heirs. It was, however, again provided that this settlement deed should be construed and take effect in accordance with the principles of the English law. The bill alleges that between January 7th, 1879, the date of the first antenuptial agreement, and January 1st, 1901, the Singer Manufacturing Company, in addition to the substantial cash dividends which it had periodically distributed among its shareholders, had accumulated a large surplus which, on the last-

named day, amounted to twenty million dollars, and that on the last-named day it declared and paid a stock dividend of two hundred per cent. which was at that time distributed to its stockholders in the form of certificates for additional shares at the rate of two to one. In this distribution there was issued to the English trustees under the deed of settlement five thousand five hundred and seventy-four additional shares in one certificate, which was duly delivered to them and now stands in their names as trustees on the books of the company. They continued to pay to Madam Sohege all the income derived from the original shares, and from these additional shares down to the date of her death, which occurred in France on May 12th, 1904. Madam Sohege, at her death, left her surviving her husband and her children by her first marriage, known as the Singer heirs; she also left a will by which she made her husband, in the words of the bill, "her universal legatee." There is no copy of the will in the case, but it will be assumed that Madam Sohege by this instrument made her husband her residuary legatee, and that as such he became entitled on her death to such portion of her estate as she was free to dispose of by will.

The complainants now claim that the stock dividend, declared by the Singer Manufacturing Company in January, 1901, should not have gone to the English trustees; that it belonged to Madam Sohege exclusively as income on her original shares, and was subject to disposition by her; that it was so disposed of by her marriage agreement with the complainant Sohege, in connection with certain sections of the French code, and especially by her will, and that she had thus transferred to the complainant Sohege, all her beneficial interest in these additional shares.

Sohege later on made an assignment to the complainant Ryan, of a fractional interest in the shares, and they join as complainants in a bill which sets up the foregoing facts and prays, among other things, that the court will award these additional five thousand five hundred and seventy-four shares to them and remove the cloud of the trustees' claim of title therefrom; that the company may be compelled to cancel the outstanding certificate therefor and issue a new certificate to the complainants;

in short, that this court may put the title to and the possession of the said additional shares in the complainants and establish their ultimate right thereto. The bill also seeks the following provisional remedies—*first,* an injunction to restrain the Singer Manufacturing Company from permitting any transfer of these shares to be made, and *second,* the appointment of a receiver to have the custody of the shares and the income thereof pending the suit. The defendants are the Singer Manufacturing Company, the English trustees and the Singer heirs. The bill was filed on December 11th, 1905. On the following day an order for an injunction was made by virtue of which a series of duplicate writs was issued, whose object was to restrain the defendant as prayed by the bill. These writs are in the following form:

"You and every of you do absolutely desist and refrain from assigning or transferring or in anywise disposing of to any person, firm or corporation any certificate or certificates representing 5,574 shares of the capital stock of the defendant, the Singer Manufacturing Company, issued by said company to Adam Mortimer Singer, Washington Merritt Grant Singer and Lewis Rendell as trustees * * * or any of said shares represented by said certificate or certificates; and you, the Singer Manufacturing Company, your officers, directors, agents and attorneys from permitting the said 5,574 shares of the capital stock of the Singer Manufacturing Company, issued by said company to Adam Mortimer Singer, Washington Merritt Grant Singer and Lewis Rendell as trustees, * * * or any of said shares represented by said certificate or certificates to be transferred or transferring the same on the books of the corporation otherwise than to the complainants herein."

The injunction was duly served on the Singer Manufacturing Company in this jurisdiction and on all the other defendants without the jurisdiction in the manner directed by the order awarding the writ.

On the same day, December 12th, 1905, this court appointed Douglas Alexander and Frank P. McDermott as receivers *pendente lite* in the cause, with authority "to receive, take into their possession and hold until the further order of this court, and subject to such orders as it may from time to time make with regard thereto, five thousand five hundred and seventy-four shares of the capital stock of the defendant, the Singer Manufacturing Company, issued by said company to Adam Mortimer Singer, Washington Merritt Grant Singer and Lewis Rendell,

as trustees, on or about the 1st day of January, 1901, * * *
together with the dividends that have been declared on said five
thousand five hundred and seventy-four shares of stock of the
said Singer Manufacturing Company since the 12th day of May,
1904, and which may hereafter be declared."

On December 13th, 1905, subpœna was issued against all the
defendants, which was on the same day duly served on the Singer
Manufacturing Company by the sheriff of Union county, who
returned all the other defendants as residents of England and
France, and an order for substituted service in accordance with
the course and practice of the court was made against all the
other defendants. This order required them to appear, plead, an-
swer or demur to the complainants' bill on or before May 2d,
1906. The Singer Manufacturing Company has answered. The
English trustees and the Singer heirs have joined in a plea to the
jurisdiction of the court. They set up the following facts, which
they claim disentitles this court to entertain jurisdiction of the
bill—*first,* that none of them is a resident or citizen of the State
of New Jersey, that an order for publication of a notice of the
suit was made, published and sent by mail to the defendants, and
that no process to appear has been otherwise served upon them
or any of them or upon any person authorized to appear in their
behalf or in behalf of any of them, and *second,* that jurisdiction
over the present controversy had been already acquired and exer-
cised by the courts of England, and that these courts, to whose
jurisdiction the construction and effect of the antenuptial agree-
ment and the deed of settlement had been committed had already
made a decree which had adjudicated against the rights now and
here claimed by Sohege.

*Mr. Edward M. Colie* and *Mr. Louis Marshall* (of the New
York bar), for the complainants.

*Mr. Richard V. Lindabury,* for the defendants.

HOWELL, V. C.

On the argument it was claimed by the counsel for the com-
plainants that the plea above set out was defective in form, and

therefore bad, because it was affected by the vice of duplicity, that is to say, that it combined a plea to the jurisdiction with a plea in bar.

It is a primary rule in chancery pleading that a plea shall reduce the issue between the parties to a single point. The facts and circumstances may be various and voluminous, but they must, in the last analysis, be reducible to a single issue, and if a plea be so framed as to present two or more distinct issues or points, it must be held bad and the defendant be put to his answer and full discovery. Hence if a plea alleges non-residence, non-service and non-appearance, this, though various, is to but one point, and would be good in form and would eventually prevail if found to be true in fact. But it is argued on behalf of the complainant that if the pleader add to this the fact that the same cause of action had already been adjudicated between the same parties, and that a decree had passed for the defendant, that would introduce into the case a diverse issue which could not be heard with the issue of non-residence, non-service and non-appearance; that one part of the plea would go to the jurisdiction of the court over the parties and that the other would tacitly admit the jurisdiction, but would set up in bar of the further action of the court the fact of the former adjudication, or, in other words, that such latter plea would be a plea in bar joined to a plea to the jurisdiction, and the latter would operate as a waiver of the former. This plea, counsel say, presents such a double aspect and must, on that account, be overruled. The defendants say in reply that they did not set out the proceedings in the English suit and the decree thereon as a plea in bar, but only for the purpose of showing the court here that another court there had entertained the same suit and had decided it, and that for such reason alone this court could not take jurisdiction. There is grave doubt about the soundness of the defendants' position. If they are wrong, then the plea must be overruled, and they must be put to their answer. In consequence of the view which will hereafter be taken of this case it will not be necessary to decide the question so raised at this stage of the discussion; it is only necessary to say that if the document filed by the defendants as a plea is really chargeable with duplicity it must fall.

Let us, however, estimate this plea at the value placed upon it by the defendants and treat it as a mere plea to the jurisdiction, disregarding the portion of it which the complainants make question about. Then we have a citizen of France, and a citizen of this state, exhibiting a bill in this court praying that shares in a New Jersey corporation held by residents of foreign countries may be awarded to them and that their names may be placed on the stock register; these foreign defendants alleging that they are beyond the reach of the court and that no decree can be made, inasmuch as the court is without jurisdiction as to them.

The question so raised by the defendants is not new to this court. It was decided in *Andrews* v. *Guayaquil and Quito Railway Co., 69 N. J. Eq.* (*3 Robb.*) *211.* There Andrews brought suit to compel the transfer of shares of the Guayaquil and Quito Railway Company, which he alleged should have been assigned to him as collateral security for certain notes made to one Pruyn, and by Pruyn endorsed over to him. The Ecuador Company was interested. It had become insolvent and its receiver was made a defendant. Both corporations were organized under the New Jersey law. The receiver of the Ecuador Company answered and filed his cross-bill against Pruyn for relief growing out of the same transaction. Pruyn pleaded non-residence, nonservice and non-appearance. Vice-Chancellor Stevens overruled the plea on the ground that the *res* of the controversy was here; that the shares in suit had their *situs* in this state, and that any question relating to them could be determined here; that the suit was *quasi in rem* and that Pruyn was a necessary party. While the opinion does not expressly state that Pruyn could be brought in by substituted service, the implication that he could be is a necessary one. The vice-chancellor bases his decision on the recent case of *Jellenik* v. *Huron Copper Mining Co., 177 U. S. 1.* If the rule were otherwise it is difficult to see how a large class of cases could be at all cognizable in our courts. Suits for the foreclosure of mortgages and other liens, for the partition of lands, for setting aside fraudulent conveyances of real estate situated here, and many other cases that might be instanced, to

which non-residents are necessary parties, could not be justiciable in our courts. It was upon this principle that the English high court of justice made its adjudication against the complainant Sohege, which is set out in the plea and upon which the defendants in this case rely. There the defendant was brought in by substituted service and the court made its decree upon the ground that the *res* of the controversy was within its jurisdiction. Indeed, if the defendant's contention were correct there are many cases of injustice which could not be heard at all, here or elsewhere, because of the impracticability of finding all the necessary parties in the same jurisdiction.

Defendants' counsel argued that in the *Jellenik Case* there would have been no jurisdiction except for the federal statute, and by analogy there could be no jurisdiction here because there is no special statute authorizing this court to take cognizance of this class of cases. The statute referred to in the *Jellenik Case* is not one which relates to the subject-matter of the suit; it merely provides for a method for serving notice on the defendant without the jurisdiction in cases in which the court already has jurisdiction of the subject-matter. This is manifestly the view of Vice-Chancellor Stevens in the *Guayaquil Railway Case;* he compares the federal statute with that of New Jersey relating to absent defendants and pronounces them to be substantially the same. The same kind of a statute came before the United States supreme court in *Roller* v. *Holly, 176 U. S. 406.* It is article 1230 of the Texas code and reads as follows:

"Where the defendant is absent from the state, or is a non-resident of the state, the clerk shall, upon the application of any party to the suit, his agent or attorney, address a notice to the defendant requiring him to appear and answer the plaintiff's petition at the time and place of holding the court, naming such time and place."

Then follow directions about what the notice shall contain. A subsequent section provides that:

"Where a defendant has been served with such notice he shall be required to appear and answer in the same manner and under the same penalties as if he had been personally served with a citation within this state."

Concerning this statute, Mr. Justice Brown says: "It is true that there is no statute of Texas specially authorizing a suit against a non-resident to enforce an equitable lien for purchase-money, but article 1230 of the code of Texas contains a general provision for the institution of suits against absent and non-resident defendants, and lays down a method of procedure applicable to all such cases. Obviously this article has no application to suits *in personam* [citing cases]. The article must then be restricted to actions *in rem,* but to what class of actions, since none is mentioned specially in the article? We are bound to give it some effect. We cannot treat it as wholly nugatory, and, as it is impossible to say that it contemplates a procedure in one class of cases and not in another, we think the only reasonable construction is to hold that it applies to all cases where under recognized principles of law suits may be instituted against non-resident defendants."

But the complainants in the case at bar are in a much stronger position than was the complainant in the *Guayaquil Railway Case.*

It appears that the shares in suit are shares of a New Jersey corporation having a *situs* here for purposes of attachment or other seizure by courts of this state; they are in fact in such a situation as that the courts of this state may for many purposes obtain and hold control over them. It likewise appears by the record of the case that the transfer of these shares has been enjoined and that the court has gone even further than to merely restrain their transfer; it has appointed receivers to whose charge and custody it has committed the shares in question. In other words, the record shows that there has been a seizure of the *res* in controversy by the strong arm of the court which can only be released by some act of the court efficient for that purpose.

The subject-matter of this suit is within the general equity powers of courts of chancery. If the necessary parties are present a decree may undoubtedly be made which will dispose of the controversy. One of the questions in this case is whether the seizure of the subject-matter of the litigation gives the court jurisdiction to dispose of the property which it has in its custody without per-

sonal service of process within the jurisdiction on the defendants holding the paper title. In other words, whether these necessary parties may be brought in by substituted service upon a seizure of the thing about which the controversy is.

Mr. Justice Field says, in *Pennoyer* v. *Neff, 95 U. S. 714* (at *p. 727*) : "Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner in person or by agent, and it proceeds upon the theory that its seizure will inform him not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state or some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or when the public is a party to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem,* but where the entire object of the action is to determine the personal rights and obligations of the defendants, that is where the suit is merely *in personam,* constructive service in this form upon a non-resident is ineffectual for any purpose."

To the same effect is the statement of Mr. Justice Dixon in *Wilson* v. *American Palace Car Co., 65 N. J. Eq. (20 Dick.) 734.* He says: "No doubt when the object of a suit is to enforce a specific lien upon property of the defendant within the state, or when the court obtains control over such property, or when the status of a citizen of a state is the subject for adjudication, a state court may be authorized, after reasonable effort to notify the absent defendant, to enforce the claim of the plaintiff respecting such property or status. In such cases the court acquires a jurisdiction *quasi in rem* sufficient to support the limited judgment, but the jurisdiction must precede the adjudication; the judgment cannot be made valid by the fact that steps might be taken to enforce it."

The argument of the complainants is that suits of the character of the one at bar are cognizable in chancery, that the filing of the bill placed the present subject-matter within the court's cognizance; that thereupon, by virtue of its interlocutory and provisional process, it took actual possession of the thing in dispute whereby the power to adjudicate upon the dispute over the *res* of the controversy became complete.

In my opinion the authorities cited on behalf of the plea do not sustain the defendants' position. *Spurr* v. *Scoville, 3 Cush. 578,* was an equity proceeding against a non-resident to compel the specific performance of an agreement for the conveyance of lands situated in Massachusetts. It does not appear that at that time there was any Massachusetts statute which authorized substituted service of process on non-residents, in which particular the case differs from the cases herein above cited. If that distinction did not exist it must still be said that while that case is authority in Massachusetts, the weight of authority in other states is entirely against it. The cases are collected in *9 Rose Notes U. S. Rep. 343.* The other case is *Hart* v. *Sansom, 110 U. S. 151.* It has generally been understood since the decision in *Arndt* v. *Griggs, 134 U. S. 328,* that *Hart* v. *Sansom* was not a case of universal application. In fact, the federal courts have gone so far in qualifying it and modifying its effect as that it may be almost said that the principle of the case has been overruled.

I therefore come to the conclusion that the plea must be overruled and the defendants put to their answer. If the plea is double this must be the result upon the purely technical grounds heretofore stated. The same result must follow from the views herein expressed as to the merits of the plea considered as a plea to the jurisdiction. A decree will be advised in accordance with these views. ·