Complainant, who is a subject and resident of Germany, by his amended bill, seeks a decree determining that he is the owner of five hundred shares of the stock of the defendant United States Steel Corporation, and asks that the steel corporation be decreed to transfer these shares to him upon its books, and to issue to him new certificates therefore; and further, that this corporation be decreed to pay to him all accumulated dividends in its possession on this stock, and that the defendant public trustee be decreed to surrender for cancellation certificates for this stock now in his possession, and that the public trustee be further directed to pay to complainant all dividends he may have received on these shares of stock.
The defendant United States Steel Corporation, which is admitted to be a corporation of this state, by its answer asks in effect for the court's protection in the event that the relief sought by complainant is granted. A motion has been made by complainant to strike from the answer of this defendant the second, third, fourth and fifth defenses presented therein. In view of the conclusion I have reached on the issue of jurisdiction, I will advise that this motion to strike be denied at this time.
The defendant public trustee appearing specially, under substituted service, has filed an answer in lieu of a plea to *Page 104 
the jurisdiction of the court, alleging in effect that he is, or represents the sovereignty of Great Britain, and that through him the crown is being sued without its consent.
To these answers complainant has filed special replications. The matter is now before the court on the question of jurisdiction raised by these pleadings, and on complainant's motion to strike out the answer filed by the public trustee. The controversy is based upon the following facts set forth in the pleadings.
The shares of stock in question were originally owned by Shearson, Hammill Company, a New York brokerage house, in whose name the certificates were issued. The certificates were duly endorsed in blank and sold by Shearson. Hammill Company, and were finally bought by complainant, who deposited them some time prior to 1914 at the London branch of the Dresdner Bank, a German corporation. At the outbreak of the great war these certificates were seized or taken possession of by the defendant the public trustee, as custodian of enemy property. This official still retains these certificates, and, like complainant, he claims to be the owner of the shares in the steel corporation, which they represent. The public trustee denied jurisdiction in this court to determine the ownership of these shares, contending that he is immune from suit at the instance of complainant, a German national.
The grounds for this claim to immunity may be summarized as follows:
1. The suit against him as public trustee is in effect against him as custodian of enemy property for England and Wales, and is therefore a suit against the British government.
2. A sovereign state cannot be sued in any court without its consent, and that the crown has not consented to be sued herein.
3. The public trustee, as custodian, is an indispensable party to the action, and as the court is without authority to obtain jurisdiction over the foreign sovereign state by its process, and is likewise powerless to enforce its decree against *Page 105 
a foreign sovereign, it is therefore without authority to hear and determine the issues involved in these proceedings, and
4. That as the United States, in the treaty of Berlin with Germany, incorporated therein the provisions of the treaty of Versailles, granting immunity to this government and its agencies from any claim or action by Germany or any of its nationals for any matter or thing done during the war; that it must be held that this government incorporated these provisions for immunity for the benefit of itself and also for the benefit of its allies, as against the common enemy and its nationals.
In support of these contentions, the court's attention has been directed to two test suits, which were recently heard, on an agreed state of facts, involving the claim of the ownership made by certain German nationals to shares of stock in the steel corporation, in which action the public trustee was a party. These cases were decided in favor of the British government by the Honorable Learned Hand in the federal court in the southern district of New York, and they are now on appeal in the United States supreme court.
The disposition of these cases affords no assistance in the present controversy, not only because as complainant contends they did not include or dispose of all of the issues involved herein, but because the question of jurisdiction over the public trustee was not raised nor considered in either case.
The merits of the contentions presented by the public trustee questioning the jurisdiction of the court must be determined by the nature of the action and the relief which is sought, and this problem is simplified by the withdrawal on the brief of complainant's claim for a personal judgment against the public trustee. The withdrawal of this claim leaves the sole question for determination on final hearing, should the case reach that stage, the ownership of these shares of stock. And with this single question for determination the action is now what our courts have termed a proceeding quasi in rem. Andrews v.Guayaquil and Quito Railway Co., 69 N.J. Eq. 211; affirmed,71 N.J. Eq. 768; *Page 106 Sohege v. Singer Manufacturing Co., 73 N.J. Eq. 567; AmparoMining Co. v. Fidelity Trust Co., 74 N.J. Eq. 197; affirmed,75 N.J. Eq. 555.
Considering the suit as a proceeding quasi in rem, does the plea of the public trustee to immunity deprive the court of jurisdiction to hear and determine it? The answer to this question depends upon whether the public trustee as custodian, is, in fact, a sovereign power, and if he is, can he claim the privilege of non-suability in a proceeding of this nature?
The public trustee of England is an officer somewhat analogous to the office of public administrator in New York, but with much more extensive powers over property of the living as well as of the dead.
Under the Public Trustee act of 1906 the public trustee was created a corporation sole, and it was provided that he "may sue and be sued under that name like any other corporation sole." By the Trading with the Enemy Amendment act of 1914 the public trustee was made custodian of enemy property, and it is therein provided that the public trustee should, "in relation to all property held by him in his capacity of custodian, have the like status * * * as if the same were held by him in his capacity of public trustee, and the Public Trustee act, 1906, shall apply accordingly."
Under this authority suits have been brought in and determined by the chancery division of the high court of justice in England against the public trustee in relation to property held by him as custodian. New York Life Insurance Co. v. Public Trustees
(1923), 39 Times L. Rev. 720; 40 Times L. Rev. 430; Stoeck v.Public Trustee (1921), 2 Ch. 67.
And Chief-Justice Marshall, in United States v. Peters. 5Cranch. 115, c., held: "It certainly can never be alleged that a mere suggestion of title in a state to property in the possession of an individual must arrest the proceedings of the court and prevent their looking into the suggestion and examining the validity of the title."
And whether this suit against the public trustee is to be deemed a suit against his sovereign "is now to be determined, *Page 107 
not by the mere name of the titular parties, but by the essential nature and effect of the proceeding, as it appears from the entire record." Ex parte New York, 256 U.S. 490, c.
Applying this test to the instant case, it is to be noted that a foreign sovereign has no inherent right to immunity from suits in the courts of another sovereign.
In Schnoor Exchange v. McFadden, 7 Cranch. 116, c., Chief-Justice Marshall stated that whatever immunity a foreign sovereign may have is with the consent of the sovereign of the forum and is extended only by courtesy.
The extension of this courtesy may be due in part to the impossibility of serving process upon a foreign sovereign, as well as upon the impossibility of enforcing a personal judgment against him. Notwithstanding these practical difficulties, there are, however, cases in England and in this country in which it has been held that a foreign sovereign may properly be made a party to the suit, when he is alleged to be interested in or to have some title to the subject-matter of the action. The PrinzFrederik (Eng. Adm.), 2 Dods. 451; The Duke of Brunswick v.King of Hanover, 6 Beav. 1; Gladstone v. Musurus Bey, 1 H. M. 495; United States v. Wilder (Mass.), 3 Sum. 308; Clark
v. Steam Navigation Co. (R.I.), 1 Story 531; Ex parteTransportes Martimos (1924), 264 U.S. 105.
In the two latter cases it was held that when a court of admiralty had jurisdiction in rem, it was wholly unimportant to whom the res belongs, although in the latter case the res was owned by the Portugese government.
The authorities are uniform in granting this immunity in purely personal actions against the sovereign, and have also extended this immunity to cases where, after hearing, the property involved was found to belong to the sovereign. But where the foreign sovereign, as here, grants the public trustee the capacity to be sued, it voluntarily strips him of his sovereign character and waives all privileges of that character. Clark v.Steam Navigation Co., supra; Bank of United States v. PlantersBank of Georgia, 9 Wheat. 904; In The *Page 108 Pesaro (District Court Southern District of New York, 1921),277 Fed. Rep. 473.
I do not find any bar to the jurisdiction of this court to determine the ownership of these shares of stock in the treaty of Berlin, or in the provisions of the Versailles treaty incorporated therein, whatever effect these provisions may be found to have as a release or an estoppel on final hearing.
The public trustee by his plea invokes immunity through the courtesy of the sovereign State of New Jersey, although he claimed no such privilege in the cases cited in the English court of chancery, nor in the test cases recently decided in the federal court in New York, nor in the earlier case of Garvan v.Certain Shares of International A. Corporation (District CourtSouthern District of New York, 1921), 276 Fed. Rep. 206, c. In all of these cases the public trustee appeared without objection to the jurisdiction, and participated in the proceedings to protect the interests of his sovereign.
I am unable to understand why the public trustee should now assume a different attitude to the sovereignty of New Jersey, and why, coupled with his assertion of immunity, he should ask this court to give extra-territorial effect to the acts of parliament, which he claims give validity to his actions as public trustee and custodian, while refusing to recognize authority in the court to investigate the legality of such actions.
Common justice requires that the rule of international law, that a sovereign state cannot be sued in the courts of its own country, or in the courts of any other country without its consent, resting as this rule does upon the courtesy of the sovereign of the forum, must, like all other laws, be applied and administered to promote justice, and not to defeat it, or to prevent a private suitor from obtaining the hearing and enforcement of a just demand.
The language of Mr. Justice Swayze, in delivering the opinion of the court of errors and appeals in the case of Amparo MiningCo. v. Fidelity Trust Co., supra, is, I think, particularly apposite to the present situation: *Page 109 
"The shares of stock * * * are personal property, whose location is in the state where the corporation is created * * *. In view of the control of the New Jersey courts over our corporation, * * * it is, we think, quite as important that the title to the shares should be determined by our courts as that the title to real estate in New Jersey should be so determined. We are not concerned with the possible rights of a bona fide
transferee of the present certificates. We are dealing only with the question of the jurisdiction of the subject-matter. Our courts can protect the rights of a bona fide holder as well as the courts of his own domicile. We think there is a res within this state, and that no personal action of the defendant is necessary which would require a decree in personam."
The res in question in this action is located in this state; no decree in personam is sought, or will be necessary, to give effect to the court's determination of the ownership of title to these shares of stock. In entertaining jurisdiction of the suit we are not attempting to exercise jurisdiction over a foreign sovereign, or over his property, but we are exercising jurisdiction over a corporation created by our laws and over its property which is within our jurisdiction. By our process we have, in effect, invited an agency of Great Britain, its public trustee, without in any way infringing upon its dignity, or derogatory to its sovereignty, to participate in these proceedings for the protection of the interests, if any of his sovereign, and to enable him to assert any claim of ownership his sovereign may have to the property which is the subject-matter of the suit.
My conclusion is that the public trustee is not to be regarded, for the purposes of this suit, as the sovereign of Great Britain, and that if he were he is not entitled to the immunity claimed. I will advise that the motion to strike the answer as a plea to the jurisdiction be granted, and that all other motions not herein disposed of await final hearing. *Page 110