## HUDSON NAV. CO. v. MURRAY.

(District Court, D. New Jersey. September 14, 1916.)

1. COURTS ☞269—JURISDICTION—LOCAL ACTIONS.

A bill by a New Jersey corporation to have judicially declared to be illegal and void stock issued to defendant and evidenced by certificates also prayed that defendant, a nonresident, be required to surrender and deliver the certificates. *Held*, that as prayers of the bill presented the main object of the suit, which was to procure an adjudication regarding the validity of defendant's title to the stock, the location of the certificates themselves is not a decisive factor, the stock itself, because of the residence of the corporation, having a situs in New Jersey; hence the fact that the certificates were fraudulently brought into the state will not deprive the local courts of jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. ☞269.]

2. COURTS ☞19—JURISDICTION OF PROPERTY—STOCK—SITUS.

Corporate stock has a situs in the state wherein the corporation is chartered and domiciled, regardless of the location of the certificates, which merely evidence the stock; hence a suit in the state of the corporation's domicile, to declare invalid the stock issued, is not one in personam.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 47–52; Dec. Dig. ☞19.]

3. COURTS ☞19—JURISDICTION OF PROPERTY—ACTIONS IN PERSONAM.

Under 1 Comp. St. N. J. 1910, p. 414, §§ 12–18, relating to substituted service, a suit by a New Jersey corporation against a nonresident defendant to have declared invalid an issue of stock, held by such defendant, is

one quasi in rem, regardless of the location of the corporation's property, the stock itself having a situs in the state, and hence a decree on such service is not open to objection that it is one in personam, based on mere substituted service.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 47–52; Dec. Dig. ☞19.]

4. REMOVAL OF CAUSES ☞111—EFFECT OF REMOVAL—INQUIRY BY FEDERAL COURT INTO JURISDICTION.

When a cause is removed from a state to a federal court, the latter tribunal will determine for itself whether jurisdiction has been validly acquired, in such respect not being bound by state statutes and decisions.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 237, 239; Dec. Dig. ☞111.]

5. APPEARANCE ☞9(6)—FOR PURPOSE OF REMOVAL—EFFECT.

Appearance by defendant for the purpose of removing a cause to a federal court does not amount to a general appearance.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. § 50; Dec. Dig. ☞9(6).]

6. REMOVAL OF CAUSES ☞114—EFFECT—JURISDICTION OF STATE COURT.

Where under 1 Comp. St. N. J. 1910, p. 414, §§ 12–18, a Court of Chancery by substituted service had acquired jurisdiction of suit by a corporation against a nonresident defendant to declare invalid stock held by him, the federal District Court, after removal, will not set aside the service because such service was not authorized under Judicial Code, § 57 (Act March 3, 1911, c. 231, 36 Stat. 1102 [Comp. St. 1913, § 1039]), relating to substituted service in the federal courts; this being particularly true as that section is limited to actions begun in federal courts.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 241–244; Dec. Dig. ☞114.]

7. CONSTITUTIONAL LAW ☞309(2)—DUE PROCESS OF LAW—WHAT CONSTITUTES.

Where in a suit quasi in rem a state Court of Chancery under 1 Comp. St. N. J. 1910, p. 414, §§ 12–18, directed a nonresident defendant to appear, plead, answer, or demur to the bill within two months, and directed service upon him of notice of pendency of the suit, and the notice was duly served, defendant was not, by reason of the substituted service denied due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 929, 930; Dec. Dig. ☞309(2).]

8. REMOVAL OF CAUSES ☞114—EFFECT OF REMOVAL.

Where after substituted service has been made, a cause is removed to the federal court, plaintiff need not obtain another order from the federal court for substituted service.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 241–244; Dec. Dig. ☞114.]

In Equity. Bill by the Hudson Navigation Company against Edward F. Murray, removed from state court. On motion to vacate an order of the Court of Chancery of New Jersey, directing defendant, a nonresident, to appear and plead to complainant's bill and to set aside the substituted service made by virtue of such order. Motion denied.

Henry E. Mattison, William J. Roche, of Troy, N. Y., and Alfred H. Strickland, of New York City, for the motion.

James Benny, of Bayonne, N. J., and Archibald R. Watson, of New York City, opposed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HAIGHT, District Judge. After an order was made by this court, in a cause between the same parties, vacating an order for substituted service made therein pursuant to section 57 of the Judicial Code (Hudson Navigation Co. v. Murray [D. C.] 233 Fed. 466), the present complainant (who was the plaintiff in that action) filed a bill in the Court of Chancery of New Jersey against the same defendant, wherein he seeks the same relief as was sought in the action originally brought in this court. It appearing that the defendant was a nonresident of New Jersey and could not be found therein, an order was made by that court, by virtue of the power vested in it by the New Jersey statutes (1 N. J. Comp. Stat. 414, §§ 12 to 18), directing the defendant to appear, plead, answer, or demur to the plaintiff's bill within two months, and providing for service upon him of notice of the pendency of such suit. The notice was duly served as in the order provided, which was in accordance with the provisions of the state statute and rules of that court. The defendant thereupon sought and procured the removal of the cause to this court, because of diversity of citizenship of the parties. He now appears specially, as in the first suit, to challenge the jurisdiction of the court to proceed against him, and seeks to have the order, authorizing the substituted service, as well as the service, vacated.

[1, 2] As in the first suit, the primary contention, as well as the premise upon which most of the argument in support of this motion is based, is that the stock certificates were fraudulently brought into the state of New Jersey by the plaintiff for the purpose of investing its courts with jurisdiction in this suit. It was pointed out in the opinion in the first case that the physical presence of the stock certificates within this district was not essential to authorize the substituted service provided for in the Judicial Code, because it was not sought to remove any incumbrance or cloud upon the title to them. Nor in this suit, so far as the validity of the order of the Court of Chancery is concerned, does the physical presence or absence of the certificates in New Jersey make any difference. The location of the stock itself (of which the certificates are merely evidence) is the decisive factor. While it is true that the bill prays, among other things, that the defendant be required to surrender and deliver the certificates (as did also that which was before the court is the Amparo Mining Company Case, to be hereafter cited), yet the main object of the suit, and one of the prayers for relief, is that the stock issued to the defendant, and evidenced by the certificates, may be judicially declared to be illegal and void. Hence, for the purposes of this motion, it must be considered that the object of the suit is to procure an adjudication regarding the validity of the title of the defendant to certain shares of stock of a New Jersey corporation. It admits of no doubt that such stock has a situs in New Jersey, irrespective of the location of the certificates, for the purposes of a suit brought there to determine questions regarding the title thereto, and that a proceeding to that end is one quasi in rem. Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647; Amparo Mining Co. v. Fidelity Trust Co., 75 N. J. Eq. 555, 73 Atl. 249 (N. J. Ct. E. & A.); s. c., 74 N.

J. Eq. 197, 71 Atl. 605 (Ct. Chan.); Andrews v. Guayaquil & Q. Ry. Co., 69 N. J. Eq. 211, 60 Atl. 568 (Ct. Chan.), affirmed 71 N. J. Eq. 768, 71 Atl. 1133; Sohege v. Singer Mfg. Co., 73 N. J. Eq. 567, 68 Atl. 64 (Ct. Chan.). The reasons why the physical presence of the certificates within the jurisdiction does not constitute the action one in personam, and as such not susceptible of being maintained by substituted service, are clearly pointed out by Vice Chancellor Stevenson and Mr. Justice Swayze in the two before cited opinions in the Amparo Mining Company Case. See, also, the remarks of Mr. Justice Harlan, 177 U. S. at the bottom of page 13 et seq., 20 Sup. Ct. 559, 44 L. Ed. 647, in the Jellenik Case. The stock as distinguished from the certificates, it will be borne in mind, is, in legal contemplation, in the custody of the complainant, over whom, of course, the court has acquired jurisdiction.

[3] As was stated in the opinion filed by this court in the first case, the New Jersey statute, which provides for substituted service upon nonresident defendants, is not as limited in its application as is the federal statute, which was then before this court. The former, although general in its language, is confined in its application to actions in rem or quasi in rem, and similar actions, and has no reference to actions in personam. Amparo Mining Co. v. Fidelity Trust Co., 75 N. J. Eq. 560, 73 Atl. 249; Wilson v. American Palace Car Co., 65 N. J. Eq. 730, 733, 55 Atl. 997 (Ct. E. & A.). It is not necessary, therefore, in this case, as it was in that, to ascertain whether there is any property within the state of New Jersey upon the title to which the defendant's alleged invalid stock has cast a cloud; the important question on this phase of the case is whether the action is one susceptible of being maintained by substituted service; in other words, whether it is one quasi in rem, as to which it is so well settled, as to need no citation of authorities, that a court may acquire jurisdiction by substituted service. This question has already been answered in the affirmative. Hence there can be no doubt that the Court of Chancery of New Jersey, if the manner of service and extent of the notice of the pendency of the action were sufficient, acquired jurisdiction in this suit over the defendant by the substituted service, and could, without his appearance, have made a binding and valid decree, which would have been entitled to full faith and credit elsewhere, respecting the validity of the stock alleged to be owned by him, provided it did not seek to compel him personally to make some disposition of the stock.

[4, 5] The next question is whether a federal court will recognize the service as sufficient to confer jurisdiction, when the question is raised therein. Undoubtedly when a cause is removed from a state to a federal court, the latter will determine for itself whether jurisdiction has been validly acquired, and in this respect is not bound by the state statutes and decisions; and the appearance by a defendant for the purpose of removing a cause to a federal court does not amount to a general appearance. Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517; Wabash Western Railway v. Brow, 164 U. S. 271, 17 Sup. Ct. 126, 41 L. Ed. 431; Clark v. Wells, 203 U. S. 164, 171, 27 Sup. Ct. 43, 51 L. Ed. 138; Mechanical Appliance Co.

v. Castleman, 215 U. S. 437, 30 Sup. Ct. 125, 54 L. Ed. 272; Cain v. Commercial Pub. Co., 232 U. S. 124, 34 Sup. Ct. 284, 58 L. Ed. 534.

[6] But this does not mean, as was contended on behalf of defendant at the oral argument (although this contention seems to be modified in the supplemental brief), that simply because the method of substituted service provided for in the state statute does not conform to that prescribed in the federal statute (section 57 of the Judicial Code), or because the state statute permits substituted service in cases for which the federal statute has made no provision, that a federal court, when a case is removed to it, must set aside the service which was otherwise perfectly valid and in harmony with the requirements of the federal Constitution and the principles of natural justice, and which would have justified a binding decree in the state court. Such a proposition finds no support in reason and, so far as I am aware, in authority, although ample opportunity was afforded to plaintiff's counsel to acquaint me with any such. Most unjust consequences might flow from such a rule. It would permit a defendant, in effect, to avoid an action to which he could be properly held to respond in a state court without violating any provision of the federal Constitution or any principle of natural justice, simply because Congress had failed to provide for substituted service in the federal courts in that particular kind of an action. This view, I think, finds support in the opinion in Clark v. Wells, supra. In that case an action was begun in a state court, and jurisdiction acquired by attachment. The case was removed to a federal court. The latter made an order for service by publication in accordance with the method of procedure prescribed by the state statute. It was contended that, as a personal judgment can only be rendered upon personal service, and service by publication under state statute cannot be made in a federal court, and as the act of March 3, 1875 (18 Stat. 472), which is the same as section 57 of the Judicial Code, was inapplicable to the case, the effect of the removal was to render nugatory the attachment proceedings in the state court. While that part of the removal statute pertaining to suits instituted by attachment (see section 36 of the Judicial Code [Comp. St. 1913, § 1018]) entered very largely into the determination of the question, nevertheless, the remarks of Mr. Justice Day (203 U. S. 171 et seq., 27 Sup. Ct. 45, 51 L. Ed. 138) seem to indicate that, irrespective of that statute, jurisdiction, properly acquired by the state court, would have been recognized in the federal court. He said:

"The transfer of the cause to the United States court gave the latter court control of the case as it was when the state court was deprived of its jurisdiction. * * * The defendant had a right to remove to the federal court, but it is neither reasonable nor consonant with the federal statute, preserving the lien of the attachment, that the effect of such removal shall simply be to dismiss the action wherein the state court had acquired jurisdiction by the lawful seizure of the defendant's property within the state."

The distinction must always be borne in mind between a case where a state court has acquired jurisdiction in a method not repugnant to the provisions of the federal Constitution and the principles of natural justice and a case where it has attempted to acquire jurisdiction in a manner contrary thereto. In the latter cases the principle upon

which the federal courts will decline to recognize as valid the method prescribed by the state statute is that the state, in the first instance, acquired no jurisdiction. But when the state has properly acquired jurisdiction, I fail to see how a federal court can decline to recognize it. In addition section 57 of the Judicial Code, in terms, applies only to suits commenced in a District Court. It would therefore seem to be inapplicable, except as it may be considered to formulate a standard of what is to be considered reasonable notice, to a suit begun in a state court and removed to a federal court. This view finds support, I think, by analogy in the decision of Judge Lanning in this district in Maeder v. Buffalo Bill's Wild West Co. (C. C.) 132 Fed. 280, 282. The instances in which the federal courts, in cases removed thereto, have declined to be bound by the statute or decisions of the state respecting substituted service, are those where such service was authorized in actions which, by their nature, were not susceptible of substituted service under the provisions of the federal Constitution or the recognized principles of law and justice, or in which the manner of substituted service and the extent of the notice given did not conform to due process of law. Instances of the first-mentioned class are found in the cases just previously cited, and of the latter in Roller v. Holly, 176 U. S. 398, 20 Sup. Ct. 410, 44 L. Ed. 520.

[7] The conclusion already having been reached that this action is one which, by its nature, is susceptible of being maintained by substituted service, the only question, therefore, remaining is whether the manner of service and extent of the notice thereby given is sufficient. I am unable to perceive why both do not conform to every requirement of due process of law. See Roller v. Holly, supra. Nor is any reason to the contrary advanced, except that it is not exactly the same as that prescribed by section 57 of the Judicial Code. But this argument is not persuasive. The differences are not fundamental and important, but are only those to be expected when two distinct legislative bodies are acting on the same subject.

[8] Defendant's contention—that after the cause was removed the plaintiff should have obtained another order from this court for substituted service and publication—is refuted by the decision in Clark v. Wells, supra, 203 U. S. 172, 27 Sup. Ct. 43, 51 L. Ed. 138.

It, therefore, follows that defendant's motion must be denied, with costs.