### KELLER v. ELKS HOLDING CO. et al.
### Civ. A. No. 2571.

United States District Court
D. North Dakota, S. E. D.

Jan. 29, 1953.

P. W. Lanier, Jr., of Lanier, Lanier & Knox, of Fargo, N. D., and Gaylord A. Saetre, of Sharp & Saetre, of Moorhead, Minn., for plaintiff.

E. T. Conmy, Jr., of Conmy & Conmy, of Fargo, N. D., for defendants Elks Holding Co. and another.

L. H. Oehlert and Lyle W. Selbo, of Nilles, Oehlert & Nilles, of Fargo, N. D., for defendants B. F. Meinecke and others.

VOGEL, District Judge.

Plaintiff, a resident of Minnesota, has brought this action against the defendants, residents of the District of North Dakota, for damages for personal injuries resulting from an accident occurring on November 16, 1950. More than the jurisdictional amount was sued for and there being diversity of citizenship, this Court has jurisdiction. The case was tried to a jury and resulted in a verdict in favor of the plaintiff in the amount of $2,500.

At the conclusion of plaintiff's case, the defendants joined in a motion for a directed verdict. Ruling thereon was deferred. At the conclusion of the entire case and before its submission to the jury, the defendants renewed such motion but, in accordance with the suggestions contained in the opinions of the Court of Appeals for this Circuit in Guess v. Baltimore & O. R. Co., 191 F.2d 976 and Craighead v. Missouri Pac. Transp. Co., 195 F.2d 652, the ruling was again deferred and the case submitted to the jury, with the aforestated result. The defendants Elks Holding Company, a corporation, and Fargo Lodge No. 260 Benevolent & Protective Order of Elks, a corporation, have now moved for judgment notwithstanding the verdict based upon their prior motions. The defendants Meinecke-Johnson Company have moved for judgment notwithstanding the verdict or in the alternative for a new trial.

The main contentions of the defendants in their current motions are that the verdict of the jury is contrary to law in that the evidence fails to disclose actionable negligence on the part of the defendants and, further, that the undisputed evidence shows that the plaintiff was himself guilty of contributory negligence as a matter of law and that the Court should have granted the motions heretofore referred to.

The facts, which, for the purposes of determining the current motions, must be viewed in the light most favorable to sustaining the verdict of the jury, are as follows:

The two Elks corporations (no particular distinction was made as regards liability between such two corporations, it being conceded that if one was liable the other would be also) are the owners and operators of a building located in the City of Fargo, North Dakota, where there is maintained and operated a club for the members of the Elks Lodge and their guests, which club consists of meeting rooms, dining rooms, bar, gymnasium and other recreational facilities.

The defendants Meinecke-Johnson Company, a co-partnership, were contractors who had been engaged by the Elks Corporations to do certain construction work in the club building, such construction work to cost in the neighborhood of $300,000.

The plaintiff was at the times alleged in the complaint a member of the Elks Lodge and as such was an invitee on the premises. At the time of the accident and for some weeks prior thereto the defendants

Meinecke-Johnson Company had been engaged in the work of reconstruction and were aware of the fact that the members of the Elks Lodge and their guests were using the facilities of the club and were invited thereon and had a right to be there.

At and prior to November 16, 1950, a great deal of reconstruction work had been done by the defendant contractors in the basement and sub-basement of the club building. In the main lobby at the head of the stairs leading to the basement and sub-basement the contractors had constructed a shed, on the door of which was a sign reading, "Keep Out". For at least a number of weeks prior to the date of the accident, the defendants Elks Corporations had placed a sign on the bulletin board in the main lobby of the club, which sign, in effect, directed the plaintiff and other members of the Elks Lodge to remove clothing and other possessions from clothing lockers which were maintained in the sub-basement of the premises.

On the evening of November 16, 1950, the plaintiff arrived at the Elks Club at between six and seven o'clock p. m. He and a friend had two drinks of whiskey in the bar, then had their dinner, and subsequently took part in a game sponsored by the Elks Club, prizes in which consisted of turkeys and chickens. During the playing of such game, the plaintiff had at least two or possibly three more drinks of whiskey. At some time between nine-thirty and ten-thirty p. m. the plaintiff decided to go home. He put on his overcoat, placed a can of chicken in each pocket thereof and, carrying a third can of chicken in his left hand, was ready to depart. While waiting for his companion to pick him up, he decided to go to the sub-basement and remove his property from the clothing locker. He had not been in the basement or sub-basement of the club building for a number of months and all changes or reconstruction thereof by the contractors had been done subsequent to his last visit to the basement.

The normal manner of going to the locker room and the manner in which the plaintiff was used to going to the locker room *prior to reconstruction* was to take the stairway on the north side of the main lobby of the club, following the same to the sub-basement, at which point the stairs faced in a westerly direction and opened into the main gymnasium. A light switch immediately to the right of a person going down the stairs and on the north wall of the gymnasium controlled the lighting in the gymnasium. From that point, a person desiring to go to the locker room would turn to his left and go south, walking in the gymnasium, from which he could enter the locker room, which was located to the east of the south portion of the gymnasium.

*Subsequent to reconstruction,* and as indicated on Defendants' Exhibit B, the normal manner of going to the locker room was to turn to the left shortly after leaving the stairway, then again to the left and through an entrance in the east wall which led to a passageway extending southward to the locker room, *which was still located in the same portion of the sub-basement as prior to reconstruction.* The gymnasium itself had been divided into smaller rooms. The north end of the old gymnasium was made into a receiving room with a wall to the south separating it from the south portion of the gymnasium. This wall was made of brick with two doors opening to the south.

A freight elevator had been or was in the process of being constructed by the Meinecke-Johnson Company on the outside of the west wall of the club building. This elevator shaft had openings on each of the floors serviced by it. An elevator pit had been dug immediately outside of the west wall and an opening had been made in the west wall which was closed by two metal doors, each swinging toward the east. As the elevator had not as yet been installed, it had been customary on the part of the contractors to keep the doors leading to the elevator pit closed and a 2 x 4 barricade wired across them to the hinges with a sign thereon reading, "Keep Out". A foreman for the Meinecke-Johnson Company testified that at the end of the work day of November 16, 1950, he had examined the entrances to the elevator shaft on the various floors and discovered that the

barricade and sign on the sub-basement entry to the elevator shaft had disappeared. He testified that he thereupon put up a new 2 x 4 which he wired to the hinges, outside the doors, that he made a new sign inscribed with the words "Keep Out" and placed it on the 2 x 4 and then left for the day.

The plaintiff testified that in attempting to go to the locker room, he reached the foot of the stairs and found that the light was on but he was confused as to just where he was; that he believed he had not as yet entered the gymnasium. The wall to the south, his left, was new to him. He failed to notice the two doors in the new wall and did not look to the east for the door which led to the locker room. Instead, he walked in a more or less westerly direction for a distance of from 40 to 50 feet, the entire width of the old gymnasium, where he saw the two doors leading to the elevator pit. These doors were new. He had never seen them before. Prior thereto that had been nothing but the blank outside brick wall of the building. The doors were closed but there was no barricade and no sign present. He opened the right door with his right hand and noticed that everything ahead of him was dark, although the room in which he stood was lighted. He could see no floor in the darkness ahead of him. Being confused because he was not sure of just where he was and thinking that he might still not be in the gymnasium, he reached to his right with his right hand and groped for a light switch. He could not find one and accordingly took one step forward into the darkness, whereupon he fell into the elevator pit, thereby injuring himself.

In order to determine where he was, he got a lighter out of his pocket, lit it and with that illumination discovered that he was in a pit, deep enough so that when he stood up the edge was about even with his chest. He placed the cans of chicken he was carrying on the ledge and then climbed out by himself.

The injuries he received appear to be undisputed in the testimony and no particular point is made as to the assessment of damages therefor by the jury.

It is the contention of all of the defendants that they were in no wise guilty of actionable negligence which resulted in the plaintiff's injuries and, further, that the injuries were the result of the plaintiff's own negligence in stepping into a dark, unfamiliar space without ascertaining what was there or using the facilities such as he had for so determining.

We are, of course, dealing solely with and bound by the laws of the State of North Dakota and the opinions of its Supreme Court in the determination of plaintiff's right to recover. Under the law of North Dakota, negligence or contributory negligence is a question of fact for the jury unless the evidence is such that reasonable minds can draw but one conclusion therefrom. Leonard v. North Dakota Co-op Wool Marketing Ass'n, 72 N.D. 310, 6 N.W.2d 576.

Regarding the question of whether the facts justify a finding of negligence on behalf of the defendants, the Court believes little or no comment is necessary. Clearly, it seems that the facts presented a jury question regarding negligence of any or all of the defendants and no finding of the jury could be disturbed. Reasonable minds might differ regarding the conclusions that should be drawn from the evidence submitted.

As to the most important and, necessarily, the more difficult problem, i. e., whether the plaintiff was guilty of contributory negligence as a matter of law, we are fortunate in having two outstanding opinions of the North Dakota Supreme Court, one relied upon by the plaintiff, Huus v. Ringo, 1949, 76 N.D. 763, 39 N.W. 2d 505, and the other relied upon by the defendants, Johnson v. Mau, 1931, 60 N.D. 757, 236 N.W. 472. They bear directly upon the instant case. If this case fits the category or class of case determined by Huus v. Ringo, then the jury's verdict should stand. If it fits the type determined by Johnson v. Mau, the motions must be granted and judgment notwithstanding the verdict must be ordered in favor of the defendants. A study of the two cases and a comparison with the facts herein is imperative.

At first blush, the distinction between the two North Dakota cases appears not too great and that comment is supported by the fact that in the more recent case of Huus v. Ringo there was a strong dissent by two justices, resulting in a 3 to 2 decision. This Court is, of course, bound by the distinction relied upon by the majority.

In Johnson v. Mau, supra, the Court reversed the trial court's denial of a motion for judgment notwithstanding the verdict and held that plaintiff was guilty of negligence as a matter of law. The Court's summary of the facts and its conclusion appear in 236 N.W. at page 477 as follows:

"In the instant case the plaintiff's evidence shows that he was in a great hurry that night, and, while the employee of the defendant was putting oil and gas in an automobile out in front of the garage, he volunteered to get the water and was directed to where the water was back in the corner of the garage. He went in by the front way, stopped and talked with an employee who was repairing a tire under a 200 candle power electric light and about twenty-five or thirty feet from the back end of the garage; he was also told that the water was back in the corner of the garage. He must have clearly understood the directions, for he went back into that corner where the water was located. Not seeing the water there, he spent no time in looking for it, and according to his own testimony he ignored the instructions given to him by the employees and said: 'I then went looking for it myself. When I couldn't find the water I thought may be he meant the other corner so I walked along across the end of the garage. It was pitch dark in there. I thought there was a floor there. I saw the sign after the accident. It was on that side of the door.' It was no part of the plaintiff's duty to get the water; that was the duty of the employee who was conditioning the automobile for the plaintiff. But assuming that the plaintiff was an invitee for the purpose of getting the water, his invitation was limited to that purpose, and, if he had followed the direction of the employees, he would have gotten the water and have been entirely safe. Or if he had asked the employee who was repairing the tire only a short distance from him before he stepped into the elevator shaft, he would have gotten the information and would not have been injured. He went beyond the scope of his invitation when he started out to look for the water himself, and without making any inquiry or taking any precaution by the exercise of any of his faculties he stepped out into the darkness. Surely reasonable minds cannot differ on the question of his contributory negligence, and it follows that the defendant's motion for judgment notwithstanding the verdict should have been granted. The order overruling defendant's motion is reversed, and the case is remanded, with directions to enter judgment for the defendant notwithstanding the verdict."

At page 475 of 236 N.W., the Court quoted, with approval, as follows:

"In the case of Central Pub. House v. Flury, 25 Ohio App. 214, 157 N.E. 794, 798, the Ohio court said: 'Darkness is nature's own warning to arouse the natural instinct of self-protection, the first law of nature. Indifference to such an instinct is a clear violation of a fundamental physical law, and should be, under circumstances like those of the instant case, more impressive and convincing than a sign "Danger," nailed on the door. Darkness was a danger in the instant case that stood gaunt and menacing in front of the eyes of the plaintiff, and under such circumstances as appear in this record to enter the shaft is, in our judgment, such contributory negligence as should prevent a recovery in law. To hold a contrary doctrine would be to declare that in times and places of danger a person is not responsible for the proper use of his faculties, and so to decide would be

to say that one is not held to the exercise of reasonable care and prudence.'"

Huus v. Ringo, supra, upon which plaintiff relies, was decided by the North Dakota Supreme Court in 1949. In that case, plaintiff was an invitee in an apartment house where he was a guest of one of the occupants thereof. He had been in the apartment house on other occasions prior thereto so he was in surroundings familiar to him. On the evening of his arrival, the hallway he traversed in going to his host's apartment was lighted. He knew that leading off from the hallway there was a toilet. Sometime later, in desiring to go to the toilet, he left his host's apartment and started into the hallway, which *at that time was dark*. Immediately adjacent to the toilet was an entrance to an elevator shaft, the doors to which for some unaccountable reason had been left open. Thinking he could find his way to the toilet in the darkness, he continued forward and *by error walked into the open elevator* shaft adjacent to the toilet entrance.

Under such facts and circumstances, the Supreme Court of North Dakota, by a 3 to 2 decision, held that the minds of reasonable persons might disagree as to whether or not plaintiff was guilty of negligence. In so doing, they referred to the Johnson v. Mau case, supra, and distinguished such holding from the facts with which they were confronted. They stated, 39 N.W. 2d at page 514:

"In Johnson v. Mau, supra, this court held that the plaintiff went beyond the scope of his invitation and entered a dark and unfamiliar place and his acts in so doing barred his recovery on the ground of contributory negligence. Many cases to the same effect may be found in an annotation in 163 A.L.R. 587. In fact, the principle that one who proceeds in the dark in a strange place is guilty of contributory negligence as a matter of law has been frequently applied, *but in most cases the elements of darkness and unfamiliarity are both present*. The same rule does not apply where the person injured was familiar with the premises which were normally safe and was injured through the presence of an unusual, unknown, and unanticipated condition. (Citations.)" (Emphasis supplied.)

The North Dakota Court said, 39 N.W.2d at page 515:

"The plaintiff was not a stranger on the premises. He had been there several times before. About four months prior to the accident he had negotiated for the rental of the apartment later occupied by the Syversons. He spent part of two days cleaning up the premises. On the evening of the accident he entered the hallway from the rear and walked forward past the toilet and the elevator shaft to the Syverson apartment. Later that evening he and Syverson went out into the hall and then to the Uptown Nook for sandwiches and returned to the apartment. The hallway was approximately five feet wide. The distance from the Syverson door to the door of the toilet was about 12 feet. The elevator was used for freight only and not for passengers. When the plaintiff opened the door of the Syverson apartment to go to the toilet the hall was completely dark. Thinking that he knew the location of the toilet he stepped forward and the next thing that he remembers he was seeing the ambulance that took him to the hospital. He opened no door after leaving the apartment."

The distinction made by the Court between the two cases appears to be premised mainly upon the fact that in cases where contributory negligence as a matter of law has been found the elements of darkness and unfamiliarity are both present and that that was true in Johnson v. Mau, supra, but not true in Huus v. Ringo, supra. The North Dakota Court in no way concedes that Huus v. Ringo overrules the doctrine of Johnson v. Mau.

Applying the facts here to the two cases relied upon by the respective parties hereto, this Court is of the opinion that Johnson v. Mau is applicable hereto and controlling. Plaintiff's counsel argue that the element of unfamiliarity is not pres-

ent but such argument is not consistent with the plaintiff's own testimony. True, he was familiar with the situation in the basement and sub-basement at a time prior to reconstruction but he was totally unfamiliar with the situation as it existed at the time of the accident and he was aware of the fact that reconstruction had been and was in progress. The accident occurred at a point some 40 to 50 feet west of where he ordinarily would have turned to his left to go to the locker room and beyond a doorway which had been constructed subsequent to the last time he was on the premises. He admits in his testimony (deposition page 14, beginning at line 16):

"Q. Mr. Keller, from your testimony it appears that you were looking for the gymnasium? A. That is right.

"Q. What kind of door was on the gymnasium? A. There was no door on it. There might have been some door, I don't recall. There was not any gymnasium there any more. I had not been near the building for a couple of weeks while it was under construction, and *all that had been changed.*

"Q. Do you know when that had been changed, how long before the accident? A. No, I don't.

"Q. When was the last time that you were in the locker room? A. Perhaps six or eight months before the construction ever started on it."

Page 15, line 27:

"Q. When you got to the sub-basement were you confused as to the arrangement down there? Did it seem different? A. *It was different entirely, when I remembered it.*

"Q. You were not too sure where you were going down there? A. That is right, I didn't. *There was a different setup from what I had been before.*

"Q. Things didn't seem to be in the proper place, as you remembered it before? A. That is right.

"Q. So when you stepped in the elevator pit you were not sure where you were going? A. I thought I was going in the gymnasium.

"Q. But you were not sure where you were going? A. No." (Emphasis supplied.)

Plaintiff was well aware of the fact that construction work had been going on for some time and was going on at that time and admits that he was confused by the situation that confronted him. He was in a lighted room and could see where he was going and that he was in changed and unfamiliar surroundings. He opened a door to the elevator pit which had never been there before. According to his testimony, he faced complete darkness beyond this strange door which he was seeing for the first time. The room in which he was standing was lighted. He opened the strange door, saw darkness ahead, yet proceeded to step into it. He testified, on page 10, line 9, of the deposition:

"Q. Could you see the edge of this pit? A. Could see the concrete or the floor right up to where it was black. There was no light in there. I could not see what was in there.

"Q. I think you testified that you could see there was an asphalt floor? A. Asphalt or tile, I don't know.

"Q. Do I understand you to say you could see the edge of the asphalt floor and beyond the edge of it it was black? A. Yes.

"Q. Could you see anything in there? A. No.

"Q. Couldn't see the bottom of the pit? A. No, I didn't know there was a pit there. I thought it was a room.

"Q. You could not see any floor in there? A. No, it was dark."

By his own testimony the plaintiff has established that the place at which the accident occurred was not familiar to him and that it was dark, which are the two elements referred to by the Supreme Court of North Dakota as being necessary to establishing plaintiff's contributory negligence as a matter of law. He was 40

to 50 feet off the usual and customary route to the locker room which was located in the same place as before reconstruction and was the only place to which he had been invited to get his clothes. He stepped into a dark and unfamiliar place without making any inquiry or taking any precaution by the exercise of any of his faculties. His were not the actions of a reasonably prudent person under the same or like circumstances. Applying the rule of Johnson v. Mau, he was guilty of contributory negligence as a matter of law and may not recover.

Defendants' motions for judgment notwithstanding the verdict must be granted.

It will be so ordered.