McCOY v. SILER et al.

No. 10952.

United States Court of Appeals
Third Circuit.

Argued March 20, 1953.

Decided June 10, 1953.

Biggs, C. J., dissented.

Alan Kahn, Philadelphia, Pa. (Ernest R. White and Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellant.

Peter P. Liebert, III, Philadelphia, Pa. (John J. McDevitt, 3rd, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This case concerns the Pennsylvania nonresident motorist statute and the United States statutes on venue. The plaintiff, an Iowa resident, sued the defendants, residents of North Carolina, for damages resulting from a motor vehicle accident which occurred in Pennsylvania. Service was made following the provisions of the Pennsylvania nonresident motorist statute.[1] The defendant raises the point that venue is lacking since the federal statute provides that: "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside."[2]

1. Pa.Stat.Ann. tit. 75, § 1201, Purdon.

2. 28 U.S.C. § 1391(a).

■ A state cannot by legislation modify or repeal a Congressional statute on the venue of federal courts.[3] On the other hand it is very clear that the venue provision may be waived. The question in this case is whether the defendants' privilege to be sued where either the plaintiff or they reside has been waived by anything they have done. Waiver, it is well established, can be by conduct as well as by expressed consent.[4]

In Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd., 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, it was held that a corporation waived the venue provisions by designating a state officer to receive service of process. From that it is argued that a motorist waives his venue privilege when he drives on the highways of a state whose law provides for service upon a designated public officer in a suit against a nonresident who has the misfortune to have an automobile accident within the state. Since these statutes are frequently phrased in terms of an appointment of the public officer to accept service of process, it is argued that a consent to service in that fashion, and to the jurisdiction of the state's courts, is implied.

■ As to the use of the fiction of consent to establish jurisdiction of a state for suit under these nonresident motorist statutes we can add little to the discussion by the First Circuit in Martin v. Fischbach Trucking Co., 1 Cir., 1950, 183 F.2d 53. The fiction of consent did well enough to provide the foundation for a step in expanding the jurisdiction which a state may exercise through its courts. But it is now perfectly clear that the jurisdiction rests on power and not consent at all; this is recognized by practically every thoughtful writer on the subject.[5]

When it comes to the question of venue presented by this case quite a number of District Courts and one Court of Appeals have thought that the Neirbo case provided the analogy for the finding of waiver

3. Murphree v. Mississippi Pub. Corporation, 5 Cir., 1945, 149 F.2d 138, affirmed 1946, 326 U.S. 438, 66 S.Ct. 242, 90 L. Ed. 185. Consequently the provisions in the Pennsylvania statute that suits against nonresident motorists may be brought in United States District Courts, as well as in state courts, in Pennsylvania can have no effect on this case.

4. See cases cited in 56 Am.Jur. 117–118, notes 8–10.

5. As early as 1919, Mr. Justice Holmes, in discussing the basis of jurisdiction over foreign corporations doing business in a state, said: "But the consent that is said to be implied in such cases is a mere fiction, founded upon the accepted doctrine that the States could exclude foreign corporations altogether, and therefore could establish this obligation as a condition to letting them in." Flexner v. Farson, 248 U.S. 289, 293, 39 S.Ct. 97, 98, 63 L.Ed. 250. Mr. Austin Scott has analyzed the nonresident motorist statutes in the same manner and has said: "It is surely unfortunate to deal with a question of jurisdiction on the basis of a fiction. To say that jurisdiction is based upon consent, but that when a foreign corporation does business in a state, its consent to the jurisdiction of the courts of the state is conclusively presumed * * * is an unhappy way of expressing an undoubtedly sound result." Scott, Jurisdiction Over Nonresident Motorists, 39 Harv.L.Rev. 563, 574 (1926).

See also the opinion of Judge Learned Hand in Smolik v. Philadelphia & Reading C. & I. Co., D.C.S.D.N.Y., 1915, 222 F. 148, 151; also that of Mr. Chief Justice Stone in International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95.

In Hess v. Pawloski, 1927, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, there is some, though not very much, language which would support the view that jurisdiction over nonresident motorists is based on their implied consent, "but the tendency in later cases is to recognize that the real basis is that of public policy and convenience." Culp, Process In Actions Against Non-Residents Doing Business Within a State, 32 Mich.L.Rev. 909, 921 (1934).

Whether the basis of jurisdiction is the power of the state to exclude the motorist, or the state's general police power (compare Scott, supra, with Culp, supra), there is no doubt that the act of driving in the state is a sufficient basis for exercising jurisdiction, and the implication of consent is neither necessary nor accurate. See Restatement, Conflict of Laws, § 84, especially comment a (1934 ed.); Restatement, Judgments, § 23

of venue here.[6] Others have thought the contrary.[7]

■■ We insist, however, that there is a real distinction between the cases where a party in fact gives consent to suit by appointing an officer of the state to receive process and a case where the party is drawn into court willy-nilly without any manifestation of consent on his part. It was many years ago held that if a corporation in fact designated such officer, that was consent, and the scope of the consent was a matter for the state's determination even though it could not force a corporation against its will into court except for the outcome of things done locally.[8] We think that when a motorist comes into a state and has an accident and is brought into court to defend himself from the consequence of that accident he does not consent to anything. He is in the state's court because the state has power to bring him there following his use of the state's highways. It seems to us unreal to say that he has "waived" the provision of a federal statute which gives him the privilege of being sued in certain places only. It seems to us a fictitious and illogical jump to reach such a conclusion.

We were pressed with the analogy of Knott Corp. v. Furman, 4 Cir., 1947, 163 F.2d 199, certiorari denied 1947, 332 U.S. 809, 68 S.Ct. 111, 92 L.Ed. 387. That case decided that the jurisdiction exercised by a state over a foreign corporation doing business within its boundaries is based on an implied consent indistinguishable from the express consent involved in the Neirbo case. Consequently the corporation waives its federal venue privilege by doing business in the state. In our opinion that case overlooked the clear distinction, drawn by the Supreme Court itself in the Neirbo opinion, between true and fictitious consent.[9] It is that very distinction which led this court to a contrary result on the precise issue involved in the Knott case. Robinson v. Coos Bay Pulp Corp., 3 Cir., 1945, 147 F.2d 512. Two other Courts of Appeals have agreed with us.[10] Insofar as the issue involved in those cases is analogous here, the weight of authority supports our conclusion.

■ The settlement of the question here involved is not one which, either way, will shake the foundations of American jurisprudence. Nor should it arouse violent emotions among those differing in opinion upon it. There is no hardship on the plaintiff if he cannot get into federal court in the Eastern District of Pennsylvania. The state court is open to him. There is no hardship on the defendant if we should decide that the venue provisions have been waived. He is subject to suit in state court anyway, and we take it that it is no harder to defend in one court than the other. Nor can we see any social issue in-

(1942 ed.); Goodrich, Conflict of Laws 201 (3d ed.).

6. Olberding v. Illinois Central Railroad Co., 6 Cir., 1953, 201 F.2d 583; Falter v. Southwest Wheel Co., D.C.W.D.Pa., 1953, 109 F.Supp. 556; Archambeau v. Emerson, D.C.W.D.Mich., 1952, 108 F. Supp. 28; Jacobson v. Schuman, D.C. Vt., 1952, 105 F.Supp. 483; Garcia v. Frausto, D.C.E.D.Mo., 1951, 97 F.Supp. 583; Kostamo v. Brorby, D.C.Neb., 1951, 95 F.Supp. 806; Burnett v. Swenson, D. C.W.D.Okla., 1951, 95 F.Supp. 524; Thurman v. Consolidated, School Dist., D.C.Kan., 1950, 94 F.Supp. 616; Urso v. Scales, D.C.E.D.Pa., 1950, 90 F.Supp. 653; Morris v. Sun Oil Co., D.C.Md., 1950, 88 F.Supp. 529; Steele v. Dennis, D.C.Md., 1945, 62 F.Supp. 73; Krueger v. Hider, D.C.E.D.S.C., 1943, 48 F.Supp. 708; Andrews v. Joseph Cohen & Sons, D.C.S.D.Tex., 1941, 45 F.Supp. 732.

7. Martin v. Fischbach Trucking Co., supra; Waters v. Plyborn, D.C.E.D.Tenn., 1950, 93 F.Supp. 651.

8. Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 1917, 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610.

9. 308 U.S. at page 173, n. 15, 60 S.Ct. 153, distinguishing, rather than overruling, the case of In re Keasbey & Mattison Co., 1895, 160 U.S. 221, 16 S.Ct. 273, 40 L.Ed. 402.

10. Moss v. Atlantic Coast Line R. Co., 2 Cir., 1945, 149 F.2d 701; Cummer-Graham Co. v. Straight Side Basket Corp., 9 Cir., 1943, 136 F.2d 828. This question is now academic in view of the 1948 amendment to the Code broadening the venue provisions of an action against a corporation. 28 U.S.C. § 1391 (c).

volved. The only policy consideration which is apparent is that we should not be astute to widen federal diversity jurisdiction. However, we think the logic of the matter is in accordance with the First Circuit case and we shall follow it. The dissent of our brethren of the Sixth Circuit does not seem to us convincing.

The judgment of the District Court will be affirmed.

MARIS, Circuit Judge (concurring).

I join fully in everything which is said in the opinion of the court. I desire to add a few words, however, since I think that the action of the district court may be sustained on the additional ground that the court never acquired jurisdiction of the persons of the defendants. Merely carrying out in this case the ritual of serving process upon the state's own officer, the Secretary of the Commonwealth,[11] was not sufficient validly to summon the nonresident defendants into court. This was settled in Wuchter v. Pizzutti, 1928, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446. In that case the Supreme Court held that in order to afford a nonresident motorist procedural due process of law it is necessary to provide for giving reasonable notice of suit to the nonresident himself. Pennsylvania Civil Procedure Rule 2079(a)[12] provides

for such notice to be given by registered mail. It thus appears that it was by such extraterritorial service, if at all, that the district court acquired jurisdiction of the persons of the nonresident defendants.[13] But this service, being extraterritorial, could not be effective to do so in the present case. For extraterritorial service in the federal courts is regulated by Federal Civil Procedure rule 4(f), 28 U.S.C.[14] That rule restricts the service of process to the territorial limits of the state in which the district court is held unless a statute of the United States authorizes service beyond those limits. In this respect the rule is a limitation upon the provisions of Federal Civil Procedure rule 4(d) (7) which authorize service in the manner prescribed by state law. Since there is no federal statute authorizing extraterritorial service in a diversity case such as this one, rule 4(f) operated to prohibit service upon the defendants in North Carolina by registered mail in the manner provided by Pennsylvania Civil Procedure rule 2079(a). The district court, therefore, did not, in my opinion, acquire jurisdiction of the person of the defendants.

It may be thought that the conclusion which the court has reached in the present case is inconsistent with the doctrine of Erie R. Co. v. Tompkins, 1938, 304 U.S.

---

11. The Pennsylvania non-resident motorist statute, 75 P.S.Pa. § 1201, provides that the Secretary of Revenue shall be the motorist's "agent for the service of process". Service here, however, was had upon another officer, the Secretary of the Commonwealth, under Pennsylvania Civil Procedure Rule 2079(a). Thus the officer served was not even a statutory "agent" and the service upon him was pure legal Mumbo Jumbo.

12. "Rule 2079. Service of process.

"(a) If an action of the class specified in Rule 2077(a) (1) is commenced in the county in which the cause of action arose, process may be served upon the defendant personally or by having the sheriff of said county send by registered mail, return receipt requested, a true and attested copy of the process:

"(1) to the Secretary of the Commonwealth, accompanied by the fee prescribed by law, and

"(2) to the defendant at his last known address with an endorsement thereon

showing that service was made upon the Secretary of the Commonwealth."

13. Extraterritorial service upon a nonresident who is otherwise subject to the jurisdiction of a state has been recognized as conferring jurisdiction over his person in conformity with due process of law. Milliken v. Meyer, 1940, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278; Travellers Health Ass'n v. Com. of Virginia, 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154.

14. "Rule 4. Process.

\* \* \* \* \* \* \*

"(f) Territorial Limits of Effective Service. All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. A subpoena may be served within the territorial limits provided in Rule 45."

64, 58 S.Ct. 817, 82 L.Ed. 1188. It is true that there is here diversity of citizenship and jurisdictional amount and that the case might have been brought in the Pennsylvania state courts. It is also true that the sweep of Erie R. Co. v. Tompkins takes in not only the field of what has been conventionally regarded as substantive law, but also calls for the application in federal diversity cases of many state laws which for other purposes are regarded as procedural.[15] But the application of the Rules of Decision Act under the doctrine of Erie R. Co. v. Tompkins necessarily stops at the point where in the procedural field an Act of Congress or a rule of procedure promulgated by the Supreme Court pursuant to Congressional authority prescribes a uniform rule for the federal courts to follow. That is the situation here. True, the plaintiff could have brought suit in the state court and the defendant could have removed the suit to the federal district court. For Section 1441(a) of Title 28, U.S.C., would give the district court venue jurisdiction,[16] and Pennsylvania Civil Procedure Rule 2079(a) rather than Federal Civil Procedure Rule 4 would be applicable to the service of process.[17] But here Section 1391 of Title 28, U.S.C., and Federal Civil Procedure Rule 4(f) prescribe the procedure in these matters and there is, therefore, no area for the application of state law under the Rules of Decision Act.

BIGGS, Chief Judge (dissenting).

Every one of the forty-eight states and the District of Columbia has a nonresident motorist statute. The first of these was enacted in 1923 and the tide was almost full by 1934.[18] Under such circumstances it seems reasonable and realistic— rather than "unreasonable" or "unrealistic"

15. Sampson v. Channell, 1 Cir., 1940, 110 F.2d 754, 128 A.L.R. 394, certiorari denied 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415; Palmer v. Hoffman, 1943, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A. L.R. 719; Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231; Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832; Cohen v. Beneficial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528; Macias v. Klein, 3 Cir., 1953, 203 F.2d 205.

16. Lee v. Chesapeake & Ohio Ry., 1923, 260 U.S. 653, 43 S.Ct. 230, 67 L.Ed. 443.

17. Hudson Nav. Co. v. Murray, D.C.N.J. 1916, 236 F. 419; Oldmixon v. Pennsylvania R. Co., D.C.N.Y., 1932, 1 F.Supp. 101.

18. The first nonresident motorist statute was that of Massachusetts, enacted in 1923. Mass.Acts 1923, c. 431, § 2. This was held Constitutional in the leading Supreme Court case of Hess v. Pawloski, 1927, 274 U.S. 352, 47 S.Ct. 632, 71 L. Ed. 1091. Federal and state courts have upheld similar statutes in other states. See, e.g., Jones v. Paxton, D.C.Minn. 1928, 27 F.2d 364; Moore v. Payne, D.C.W.D.La.1929, 35 F.2d 232; Cohen v. Plutschak, D.C.N.J.1930, 40 F.2d 727; Morrow v. Asher, D.C.N.D.Tex.1932, 55 F.2d 365; State ex rel. Cronkhite v. Belden, 1927, 193 Wis. 145, 211 N.W.

916, 214 N.W. 460, 57 A.L.R. 1218; Ashley v. Brown, 1930, 198 N.C. 369, 151 S.E. 725; Hartley v. Vitiello, 1931, 113 Conn. 74, 154 Atl. 255; Shushereba v. Ames, 1931, 255 N.Y. 490, 175 N.E. 187.

Delaware, Louisiana, Maryland, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, Texas, Vermont and Wisconsin are among the states which enacted nonresident motorist statutes prior to 1930. By 1934 thirty-five states had such statutes in some form; and by 1938, of all the states, and the District of Columbia, only Missouri, Nevada and Utah lacked similar laws. These states have recently joined the majority. See Mo.Laws 1941, p. 435, Mo.Rev.Stat.Ann. §§ 8410.1—.14, 1943; Utah Laws 1943, H.B. 43, Utah Code Ann. § 57–13–12, Supp.1943; Nev.Stats. 1949, p. 418, Nev.Comp.Laws § 4441.01, Supp.1943–1949.

As early as 1932 the Uniform Motor Vehicle Code contained provisions similar to those of the Massachusetts statute. See 9 Uniform Laws Ann. 281 (1932). The state statutes have been exhaustively discussed and compared by legal writers. See Culp, Process in Actions against Non-Resident Motorists, 32 Mich.L.Rev. 325 (1934); Culp, Recent Development in Actions against Nonresident Motorists, 37 Mich.L.Rev. 58 (1938); Babbitt, Motor Vehicle Law § 372 (4th ed. 1933); 61 C.J.S., Motor Vehicles, § 502a; 5 Am.Jur. § 590.

—to hold that when a motorist drives his car into a state he *does* voluntarily perform an act which appoints an official of the state as his agent for service. As in Neirbo Co. v. Bethlehem Shipbuilding Corp., 1939, 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167, he loses his venue privilege by "submission through conduct." In Neirbo the conduct was the voluntary express designation by the corporation of an agent for service. But Bethlehem did not expressly waive its venue privilege. Under the nonresident motorist statutes, a motorist does not formally or in writing designate the state official as his agent. He does not expressly say to the Secretary of State or the Registrar of Motor Vehicles, "I designate you my agent for service." If he did so I conceive that the majority would concede that the venue privilege was waived. But this is just what the nonresident motorist does do in substance and effect when to-day he drives from one State and into another. There is but minuscule practical difference between the voluntary express designation by a corporation of an agent for service as in Neirbo, and the voluntary, though not express, act of the nonresident motorist, a natural person, whereby the state official is made his agent for service. In neither case is the venue privilege expressly waived. In both cases **the** privilege should be deemed to be waived for in each case the venue privilege is lost by submission through conduct.

The nonresident motorist entering the Commonwealth of Pennsylvania should be deemed to be aware that he necessarily appoints a state official as his agent for service. And since service on this official under the state statute is also sufficient to confer jurisdiction upon the federal court under FRCP 4(d) (7), the motorist should also be deemed to anticipate being held to answer suit in such a court. Concededly, a state legislature cannot legislate effectively as to venue in a federal court. But while the Commonwealth of Pennsylvania, in enacting Section 1201, 75 P.S.Pa., providing that the motorist constitutes a state official his agent for service in the courts of the Commonwealth and " * * * in the United States District Courts of Pennsylvania * * *", could not affect the federal venue statute, it did provide a basis for the conclusion that a motorist who subjects himself by his conduct to the jurisdictional provisions of the statute should also be deemed to waive his federal venue privileges.[19]

In Neirbo the Supreme Court pointed out that corporations do business outside their originating bounds and this fact made "intolerable their immunity from suit in the states of their activities." As economic advances were made the law took the changed circumstances into consideration and, finally, in Ex parte Schollenberger, 1877, 96 U.S. 369, 24 L.Ed. 853, "Mr. Chief Justice Waite * * * displaced metaphor with common sense." As was also said in Neirbo the decision in the Schollenberger case "was not a matter of technical legal construction, but a way of looking at corporations", and "Men's minds have become habituated to corporate activities which crossed state lines." So here, save only that the Pennsylvania nonresident motor-

19. What has just been said is in line with what was written by the Supreme Court in Baltimore & O. R. Co. v. Harris, 1870, 12 Wall. 65, 20 L.Ed. 354, and Lafayette Ins. Co. v. French, 1856, 18 How. 404, 15 L.Ed. 451, and reiterated in Neirbo, as follows: "As to diversity cases, Congress has given the federal courts 'cognizance, concurrent with the courts of the several States'. * * * The consent, therefore, extends to any court sitting in the state which applies the laws of the state." See 308 U.S. at page 171, 60 S.Ct. at page 156, and note 7 cited to the text. As was pointed out in Angel v. Bullington, 1946, 330 U.S. 183, 187, 67 S.Ct. 657, 659, 91 L.Ed. 832, insofar as diversity jurisdiction is concerned, the United States district courts are "in effect, only another court of the State". See also Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079. In fact to take a contrary view is to destroy the symmetry of state and federal jurisdictions, long sought and eventually effected in Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188. As to the antiquity of the concurrent jurisdiction referred to see Section 11 of the Judiciary Act of 1787, 1 Stat. 78. Cf. FRCP 4(d) (7).

ist statute and others substantially similar to it present a way, now hardly new, of looking at motorists who drive into a state for business or pleasure. The days when an interstate motor trip was a high adventure and not a common course of conduct are gone with the solid rubber tire. The Commonwealth of Pennsylvania, authorizing a foreign corporation to do business within its borders, requires as a condition that the corporation appoint an agent for service in the Commonwealth. The Commonwealth of Pennsylvania, permitting—really, authorizing—a nonresident motorist to drive in the State, whether for business or for pleasure, imposes a substantially similar condition, viz., that he make a state official his agent for service. The question is really one of public policy as was pointed out in Neirbo. As Mr. Justice Frankfurter cogently stated, 308 U.S. at page 168, 60 S.Ct. at page 155, "Whether such surrender of a personal immunity be conceived negatively as a waiver or positively as a consent to be sued, is merely an expression of literary preference." It is true that one of the purposes behind section 51, as it is behind newer section 1391(a) was to save defendants from inconvenience. Id. at page 168, 60 S.Ct. 153.[20] But the convenience of defendants, whether corporations or natural persons, is a practical thing. One can well conceive of the respective States if the majority view prevails, creating ports of entry for the incoming nonresident motorist wherein he shall "sign in" and expressly designate a state official as his agent for service in case he has an accident within the State; otherwise, entry prohibited. The respective States could even compel the execution of an express waiver of the federal venue privilege by the incoming motorist and such a course, I believe, would meet no constitutional barrier.

The fiction employed in Neirbo is a useful legal artifact. I can perceive no reason why a similar artifact should not be employed in the instant case. All the circumstances seem to call for its use. In the present state of the law, including the forty-nine nonresident motorist statutes, it seems artificial not to employ the fiction and to hold that the nonresident motorist consents to be sued in the state when he enters it. As I have reiterated, it seems unreasonable at least under the circumstances at bar, to treat the motorist's implicit consent to be sued in the state on a different basis from an express consent by him. If mine be a reasonable interpretation of the law and the operative facts it would seem to follow that the nonresident motorist should be deemed to have waived his venue privilege in a United States district court.

I do not agree with the reasoning or the conclusion in Martin v. Fischbach Trucking Co., 1 Cir., 1950, 183 F.2d 53. I agree with the conclusion reached in Olberding v. Illinois Central R. Co., 6 Cir., 1953, 201 F.2d 582.

For the reasons stated I must respectfully dissent from the view expressed by the majority.

20. I must concede that certain language used in the Neirbo case looks the other way insofar as the natural person as a defendant is concerned. For example in 308 U.S. at page 168, 60 S.Ct. at page 155, Mr. Justice Frankfurter states, "When the litigants are natural persons the conceptions underlying venue present relatively few problems in application." See also note 15 cited to the text in Neirbo, 308 U.S. 165, at page 173, 60 S.Ct. 153, at page 157, and the distinction set out therein in respect to In re Keasbey & Mattison Co., 160 U.S. 221, 229, 16 S.Ct. 273, 40 L.Ed. 402, "The decisive difference * * * [in Keasbey] is that in the latter case the designation under state law which is the basis of consent had in fact not been made." But cf. Knott Corporation v. Furman, 4 Cir., 1947, 163 F.2d 199, where the defendant, albeit a corporation, had not expressly appointed the Secretary of the Commonwealth of Virginia as its process agent but the fact that the defendant was doing business in Virginia was deemed a waiver of the venue privilege.

Generally on the subject of "submission through conduct" see Steele v. Dennis, D.C.Md., 1945, 62 F.Supp. 73, 74, (*personal* service was made on the motorist within the State), and Krueger v. Hider, D.C.S.C., 1943, 48 F.Supp. 708.